UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARIA ESCRIBA, | ) | 1:09-cv-1878 OWW MJS |
| | ) | |
| Plaintiff, | ) | ORDERS ON CROSS-MOTIONS FOR |
| | ) | SUMMARY JUDGMENT/ |
| v. | ) | ADJUDICATION |
| | ) | |
| FOSTER POULTRY FARMS, a | ) | |
| California corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## I.  INTRODUCTION

The parties' cross-motions for summary judgment are before the court. Maria Escriba ("Plaintiff") and Defendant Foster Poultry Farms ("FPF" or "Defendant") have respectively moved for partial summary judgment on Plaintiff's interference claims and Defendant's affirmative defenses.[1] Defendant FPF has moved for summary judgment on claims one through six in the first amended complaint and on the punitive damages claim.

---

[1] Plaintiff also moves to strike portions of John Dias' testimony. (Doc. 61.) Mr. Dias' testimony was not considered. Plaintiff's Motion to Strike is moot.

1

1

## II.  PROCEDURAL BACKGROUND

2    Plaintiff filed this action, on October 26, 2009. The

3  operative First Amended Complaint ("FAC") asserts seven causes of

4  action against FPF: (1) Interference under Family Medical Leave

5  Act ("FMLA"); (2) "Discrimination" under FMLA; (3) Failure to

6  provide leave in violation of the California Family Rights Act

7  ("CFRA")[2]; (4) Unlawful discharge under CFRA; (5) Failure to

8  prevent discrimination in violation of the Fair Employment and

9  Housing Act ("FEHA"); (6) Wrongful termination in violation of

10  public policy; and (7) Failure to promptly pay wages owed.

11    On March 30, 2010, FPF answered Plaintiff's FAC and alleged

12  fourteen affirmative defenses. (Doc. 6.) FPF moved for summary

13  judgment on Plaintiff's first through sixth claims on March 28,

14  2011. (Doc. 32.) Defendant asserts that Plaintiff's father did

15  not have a serious medical condition, Plaintiff did not give

16  timely or adequate notice to invoke FMLA-protected leave, and

17  Plaintiff's failure to comply with the collective bargaining

18  agreement led to her termination.

19    Plaintiff opposes FPF's motion (doc. 57.) and filed a cross

20  motion seeking partial summary judgment on her Interference

21  claims and Defendant's affirmative defenses. (Doc. 40.)

22

23    [2]  At oral argument, the parties agreed that Plaintiff's
24  FMLA and CRFA claims are substantively identical. Any legal
     analysis of the FMLA applies equally to Plaintiff's CFRA claims.
25  *See e.g., Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1145 n. 4 (9th
     Cir. 2003) ("CFRA adopts the language of the FMLA and California
26  state courts have held that the same standards apply."); *See also*
     *Moreau v. Air France*, 2002 WL 500779, *1 (N.D.Cal. Mar.25, 2002)
27  (discussing only FMLA principles because CFRA and FMLA are
28  "substantively identical"), *aff'd*, 343 F.3d 1179 (9th Cir.2003).

1

2                    II.  **BACKGROUND FACTS**[3]

3        A.    **UNDISPUTED FACTS**

4        1. Plaintiff was 50 years old at the time of her
5    termination, has a third grade education, and earned $9.71 per
6    hour after 18 years in the same job, eight at FPF.

7        2. Prior to her termination, Plaintiff was never disciplined
8    for tardiness or unexcused absence throughout the course of her
9    employment at FPF.

10       3. Plaintiff's employment at FPF was terminated on December
11   12, 2007.

12       4. Plaintiff speaks Spanish and has limited English
13   proficiency.

14       5. FPF owns and operates a turkey plant which is in the
15   business of packaging turkeys for consumer purchase in
16   supermarkets and other retail outlets.

17       6. Defendant's turkey plant operations employ approximately
18   1,300 employees.

19       7. It is undisputed that Defendant is an employer covered by
20   the FMLA.

21       8. It is undisputed that Plaintiff worked more than 1,250

22

23   ───────────────
         [3] The following background facts are taken from the parties'
24   submissions in connection with the motions and other documents on
     file in this case.  The parties have filed various evidentiary
25   objections to the evidence submitted in support of their
     adversary's motion for summary judgment. Except as noted, no
26   objected-to evidence was considered and/or the information could
     be found from other sources that did not give rise to evidentiary
27   issues. Except as noted, the parties' evidentiary objections are
     moot.
28

                              3

hours prior to her time off in November 2007.

   B.   **DISPUTED FACTS**

      1.   **Serious Medical Condition.[4]**

   9. During November and December 2007 Plaintiff asserts that her father, Mr. Merlos, had multiple serious and chronic health conditions involving continuing treatment, including the following: diabetes, hypothyroidism, chronic adult malnutrition, arterial hypertension, pneumonia, urinary tract infection, anemia, benign prostate hyperplasia and chronic prostate inflammation.

   10. Plaintiff states that in November and December, 2007 while she was present in Guatemala with her father, she observed that he was in the hospital more than three days, that he was sick, weak, that he suffered continuing pain and discomfort.

   11. Further, that he had significant difficulty urinating and underwent surgery on his prostate. Plaintiff saw his surgical scar.

   12. Mr. Merlos, who was in his eighties, was evaluated and treated by at least four different doctors, Dr. Perez, Dr. Davila, Dr. Alvarez, and Dr. Maulhardt for multiple illnesses between November 25, 2007 and December 27, 2007.

      2.   **Plaintiff's November 19, 2007 Leave Request And Termination.**

   13. On November 16, 2007, Plaintiff received a phone call

---

   [4] Defendant's evidentiary objections to the medical notes and declarations of various Guatemalan doctors provided by Plaintiff are discussed under "Evidentiary Objections."

1  from her niece informing her of her father's deteriorating
2  condition.

3      14. That same day Plaintiff arranged for purchase of a plane
4  ticket to Guatemala.

5      15. On the next business day, November 19, 2007, Plaintiff
6  asked her supervisor, Linda Mendoza[5], for leave to fly to
7  Guatemala because her father was ill.

8      16. On November 21, 2007, Ms. Mendoza told Plaintiff that
9  Plaintiff was entitled to two weeks of vacation, from November
10 26, 2007 to December 9, 2007.

11     17. The content of the conversation between Ms. Mendoza and
12 Plaintiff on November 21, 2007 is disputed.

13     18. Defendant asserts that Ms. Mendoza was concerned that
14 two weeks may not be enough time for Plaintiff and wanted to
15 ensure there were no misunderstandings, so she asked fellow
16 employee Alfonso Flores to translate.

17     19. Ms. Mendoza asked Mr. Flores to inquire as to whether
18 Plaintiff needed more than two weeks leave. Specifically, whether
19 she wanted medical leave time off after her vacation.[6]

20     20. Mr. Flores testified that he asked Plaintiff twice and
21 both times she answered that she did not want more time.

22

23     [5] Linda Mendoza does not speak Spanish.

24
25     [6] Plaintiff objects to Mr. Flores' deposition testimony as
   hearsay. (Doc. 58, Plt's Resp. to Def''s UDF at 14.) The
26 testimony is not considered to prove the matter asserted. *See* FRE
   802. The testimony is offered to show that a dispute regarding a
27 material issue of fact exists regarding whether there was a
   conversation with Mr. Flores and as to what Plaintiff said about
28 how much time off she requested.

1    21. Mr. Flores further testified that he told Plaintiff if
2    she needed more time, she must to go to HR.

3    22. Plaintiff states that no such conversation took place
4    and that Mr. Flores was never present during her discussions with
5    Ms. Mendoza.

6    23. Plaintiff asserts that, in fact, she requested more time
7    from Ms. Mendoza and Ms. Mendoza refused.

8    24. Plaintiff states that Ms. Mendoza may have told her to
9    go to HR, but that this directive was given in English, and not
10   Spanish, Plaintiff's language.

11   25. Plaintiff told Ms. Mendoza if she needed more time, she
12   would have her father's doctor fax a note, to which Ms. Mendoza
13   did not respond.

14   26. Later that same day, Plaintiff told plant
15   superintendent, Edward Mendoza[7], that she was using two weeks
16   vacation to go to Guatemala because her father was ill in the
17   hospital. Undisputed.

18   27. Plaintiff later told another supervisor, Moises Lemus,
19   that she needed to leave because her father was ill. Undisputed.

20   28. The parties dispute what was said between Mr. Mendoza
21   and Plaintiff.

22   29. Plaintiff asked Mr. Mendoza what to do in case she
23   needed to extend her leave.

24   30. Plaintiff states that Mr. Mendoza responded by granting
25   her permission to take indefinite leave when he stated, "Go, and
26   when you come back, bring the doctor's note."

27   _____

28       [7] Edward Mendoza does speak Spanish.

1    31. Conversely, Mr. Mendoza testified that he told Plaintiff

2    if she needed more time, she would have to call HR and they would

3    ask her to send in a doctor's certificate.[8]

4    32. Defendant FPF accounted for the first two weeks of

5    Plaintiff's time off as vacation.

6    33. None of the supervisors Plaintiff spoke to advised

7    Plaintiff of her Family Leave rights and obligation before she

8    left for Guatemala.

9    34. Defendant did not request Plaintiff provide a medical

10   certification by a certain date, nor did it inform her of the

11   consequences of not doing so.

12   35. Although Defendant did not inform Plaintiff of any

13   obligations or procedures under FMLA or consequences of

14   noncompliance, Defendant asserts Plaintiff knew of the procedure

15   to obtain FMLA and CFRA leave as Plaintiff admits she obtained

16   FMLA leave from FPF on twelve prior occasions.

17   36. Of these approved Family leaves, nine were for

18   Plaintiff's personal health condition, and three were for a

19   family member.[9]

20   _____

21   [8] Plaintiff states that Mr. Mendoza's testimony that
     Plaintiff would need to go to HR is irrelevant. (Doc. 58, Plt's
22   Response to Def.'s UDF No. 33 at 15.) Mr. Mendoza's testimony has
     a tendency to make the existence of a fact of consequence to the
23   determination of the action — namely, whether such a conversation
     occurred and whether Plaintiff was given permission for
24   indefinite leave by Mr. Mendoza — more probable or less probable
25   than it would be without the evidence. *See* Fed. R. Evid. 401.

26   [9] Plaintiff objects to this information as irrelevant.
     (Doc. 58, Plt's Response to Def.'s UDF No. 14 at 7.) Plaintiff's
27   prior FMLA leave has a tendency to make the existence of a fact
     of consequence to the determination of the action — namely,
28

37. Plaintiff stayed in Guatemala past her scheduled two week leave.

38. Plaintiff claims in late November or early December she unsuccessfully attempted to call Defendant's H.R. office from a public telephone in Guatemala.

39. Plaintiff further claims she attempted to fax medical certifications to Defendant.

40. Neither the fax nor the call went through.

41. There is no corroboration of either assertion.

42. When Plaintiff did not come to work or call FPF within three days, Defendant terminated Plaintiff pursuant to the Union's Collective Bargaining Agreement ("CBA")[10] which provides:

> 4.3  An *individual's employment with the Employer shall be terminated*, and the employee . . . loses all seniority, when any of the following occurs:
> . . .
> 4.3.4  The employee fails to report for work at the end of a leave of absence unless such . . . failure is due to circumstances beyond the employee's control;
> . . .
> 4.3.7  *The employee is absent for a period of three (3) days in cases of emergency beyond the . . . employee's control, and fails to notify the Employer and secure a leave of absence*. ("Three Day Rule")

43. On or about December 26, Plaintiff faxed a medical

_____

whether Plaintiff knew how to provide FPF with sufficient notice under FMLA — more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401.

[10] Plaintiff asserts the CBA and its terms are not relevant. (Doc. 58, Plt's Response to Def.'s UDF at 2.) The CBA has a tendency to make the existence of a fact of consequence to the determination of the action — namely, the terms applicable to Plaintiff's termination — more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. The language of the CBA is considered.

8

1  certification from Dr. Alvarez regarding her father's medical
2  condition to Union Representative Carlos Valenzuela.

3       44. FPF received the certification December 27, 2007.

4       45. On January 2, 2008, Plaintiff gave Defendant Dr. Perez's
5  certification regarding her father's health condition.

6       3. <u>Post-Termination Events.</u>

7       46. Defendant's experienced labor relations manager, Jon
8  Diaz, conducted an investigation to consider Plaintiff's request
9  for reinstatement.

10      47. Defendant refused to reinstate Plaintiff.

11      48. Plaintiff's Union filed a Grievance on her behalf.

12      49. A Board of Adjustment under the CBA upheld Plaintiff's
13 termination.

14      50. The vote was 4-0 to uphold termination.

15      51. Plaintiff challenged the Union's decision not to
16 arbitrate the Grievance before the NLRB.[11]

17      52. The NLRB upheld the Union's decision.

18      53. Plaintiff did not file a timely appeal.

19      54. Plaintiff filed a claim for unemployment benefits.

20      55. A hearing was held to determine whether Plaintiff
21 voluntarily left her job with Defendant without good cause and
22 whether Plaintiff provided E.D.D. with the documents required to

23 _____

24      [11] Plaintiff asserts the challenge of the Union's decision
   is not relevant. (Doc. 58, Plt's Response to Def.'s UDF Nos 40-41
25 at 17.) Plaintiff's challenge has a tendency to make the
   existence of a fact of consequence to the determination of the
26 action — namely, whether Plaintiff's termination was done
   maliciously for punitive damages purposes — more probable or less
27 probable than it would be without the evidence. *See* Fed. R. Evid.
28 401.

establish her identity.

56. At the Unemployment Insurance hearing, Plaintiff testified in response to questions by the administrative law judge that she knew that the employer policy was that if she missed three consecutive working days without reporting, she would be terminated. However, she later testified that she had relied on the "word" of Mr. Mendoza, who allegedly gave her permission to stay indefinitely in Guatemala.

57. FPF, at the time of the Unemployment Insurance appeal, did not dispute Plaintiff's father's serious medical condition or question the doctor's certifications.

3. <u>Plaintiff's Claim for Wages Owed.</u>

58. Plaintiff asserts that Defendant did not pay her final wages or for any time off until March 3, 2010, after Plaintiff filed this lawsuit.

59. Whether there was any settlement concerning payment of unpaid wages and related amounts still owed to Plaintiff at the time she filed this lawsuit, remains disputed, as does any entitlement to attorneys' fees respecting those claims.


III. <u>EVIDENTIARY OBJECTIONS TO PLAINTIFF'S MEDICAL EVIDENCE</u>

Plaintiff's declaration describes that in November and December, 2007 while she was present in Guatemala with her father, she observed that he was in the hospital more than three days, that he was sick, weak, that he suffered continuing pain and discomfort. (Doc. 63, Decl. Terman, Ex. A, Decl. Escriba at ¶¶ 8-10.) That he had significant difficulty urinating and underwent surgery on his prostate. (Id. at ¶¶ 8-9.) Plaintiff saw

1  the surgical scar. (Id. at ¶ 9.) Her testimony of her personal

2  knowledge to establish that her father had a prostate operation

3  is supplemented by testimony and medical notes from an attending

4  physician, describing the nature of the surgery and some of the

5  consequences of the benign prostate hyperplasia condition. (*See*

6  Doc. 63, Decl. Terman, Ex. E, F, G, H, I, J, K.)

7      Defendant objects to the medical evidence. Plaintiff offers

8  the documents as self-authenticating under Fed. Rule of Evid.

9  ("FRE") 902(3), (4), (8), and/or (12). Alternatively, Plaintiff

10  asserts the objections can be overcome by the residual hearsay

11  exception, FRE 807.

12      The documents do not meet the asserted exceptions under Rule

13  902. No person making any certification does so in an official

14  capacity under the laws of Guatemala to make the execution or

15  attestation nor to finally certify the genuineness of the

16  documents.  *See* 902(3). These documents are not offered as

17  certified copies of public records. *See* 902(4). The documents are

18  not acknowledged under Rule 902(8). They are not accompanied by a

19  certificate of acknowledgment executed in the manner provided by

20  law by a notary public or other officer authorized by law to take

21  acknowledgments. They do not meet Rule 902(12) as these are not

22  the original or duplicate of a certified foreign record of

23  regularly conducted activity that would be admissible under FRE

24  803(6). There is no accompaniment of a written declaration by its

25  custodian or "other qualified person" certifying that the

26  documents:

27      (a) were made at or near the time of the occurrence of the

28  matter set forth or from information transmitted by a person with

1  knowledge of the matters;

2      (b) were kept in the course of the regularly conducted
3  activity; and

4      (c) were made by the regularly conducted activity as a
5  regular practice.

6      *See* Rule 902(12). None of these requirements are strictly
7  satisfied.

8      Plaintiff invokes FRE 807, the residual trustworthiness
9  exception, maintaining that there are equivalent circumstantial
10 guarantees of trustworthiness to prevent exclusion by the hearsay
11 rule of the doctors' notes and other medical records. The
12 statements offered as evidence are of material facts; to wit, the
13 description of Mr. Merlos' medical condition, treatment, and
14 duration of various illnesses suffered by him. FRE 807(A). These
15 statements are more probative on the point for which offered than
16 any other evidence which the proponent can procure through
17 reasonable efforts; i.e., depositions in the country of Guatemala
18 or special questions by deposition upon written interrogatories
19 and/or other discovery which would be required to be conducted
20 through letters rogatory or a request for international judicial
21 assistance through the Court system of Guatemala. FRE 807(B). The
22 time, expense, and effort required in view of the absence of a
23 real and bonafide controversy over the medical condition of the
24 father, do not justify such effort and expense. Here, there is no
25 genuine dispute over the medical condition of Mr. Merlos in light
26 of FPF's duty to inquire further about the "illness," if FPF had
27 a question (*see* 29 CFR § 825.303(b)) and Defendant's admission at
28 the Unemployment Insurance hearing (*see* doc. 43, Decl. Terman,

Ex. R at 34:1-3.) The interests of justice will best be served by admission of the statements into evidence. FRE 807(C).

Plaintiff has made known to Defendant sufficiently in advance of the hearing the evidence sought to be adduced to provide Defendant with a fair opportunity to meet Plaintiff's invocation of the residual exception. Id. The Defendant's response has been to invoke hypertechnical evidentiary objections which do not advance the interests of justice or the progress of this litigation. The residual exception is satisfied, the evidence of the doctor's notes and declarations will be considered.

## IV. LAW AND ANALYSIS

### A. STANDARD OF DECISION

Summary judgment/adjudication is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable

1    trier of fact could find other than for the moving party."

2    *Soremekun v. Thrifty Payless*, Inc., 509 F.3d 978, 984 (9th

3    Cir.2007).  With respect to an issue as to which the non-moving

4    party will have the burden of proof, the movant "can prevail

5    merely by pointing out that there is an absence of evidence to

6    support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

7        When a motion for summary judgment is properly made and

8    supported, the non-movant cannot defeat the motion by resting

9    upon the allegations or denials of its own pleading, rather the

10   "non-moving party must set forth, by affidavit or as otherwise

11   provided in Rule 56, 'specific facts showing that there is a

12   genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting

13   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "A

14   non-movant's bald assertions or a mere scintilla of evidence in

15   his favor are both insufficient to withstand summary judgment."

16   *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).  "[A]

17   non-movant must show a genuine issue of material fact by

18   presenting *affirmative evidence* from which a jury could find in

19   his favor." *Id*. (emphasis in original). "[S]ummary judgment will

20   not lie if [a] dispute about a material fact is 'genuine,' that

21   is, if the evidence is such that a reasonable jury could return a

22   verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  In

23   determining whether a genuine dispute exists, a district court

24   does not make credibility determinations; rather, the "evidence

25   of the non-movant is to be believed, and all justifiable

26   inferences are to be drawn in his favor." *Id*. at 255.

27

28

**14**

B. **FMLA LEAVE ENTITLEMENT**.[12]

The FMLA provides job security and leave entitlements for employees who need to take absences from work for personal medical reasons, to care for their newborn babies, or to care for family members with serious illnesses. 29 U.S.C. § 2612. The FMLA entitles qualifying employees to take unpaid leave for up to 12 weeks each year provided they have worked for the covered employer for 12 months. 29 U.S.C. § 2612(a).

The FMLA creates two interrelated substantive rights for employees. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132-33 (9th Cir. 2003). First, an employee has the right to take up to twelve weeks of leave for the reasons described above. 29 U.S.C. § 2612(a). Second, an employee who takes FMLA leave has the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave. 29 U.S.C. § 2614(a).

To protect the employee, the FMLA prohibits interference with the exercise of the employee's right to take leave. 29 U.S.C. § 2615(a). "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title." 29 U.S.C. § 2615(a)(1).

Congress has authorized the Department of Labor ("DOL") to

_____

[12] The FMLA was amended in 2008, and the DOL revised its implementing regulations effective 2009. Nat'l Defense Auth. Act Pub. L. No. 110-181, Sec. 585 (2008); 73 Fed. Reg. 67934 (Nov. 17, 2008). The events giving rise to Plaintiff's complaint occurred prior to these amendments and revisions. All references are to the prior version of the FMLA and its 1995 regulations.

15

1 │ issue implementing regulations for the FMLA. 29 U.S.C. § 2654.

2 │ These regulations are entitled to deference under *Chevron USA,*

3 │ *Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837,

4 │ 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Bachelder v. Am.*

5 │ *W. Airlines, Inc.*, 259 F.3d 1112, 1123 n. 9 (9th Cir. 2001). DOL

6 │ regulations state that "[t]he FMLA prohibits interference with an

7 │ employee's rights under the law." 29 C.F.R. § 825.220(a). Any

8 │ violation of the FMLA itself or of the DOL regulations constitute

9 │ interference with an employee's rights under the FMLA. 29 C.F.R.

10 │ § 825.220(b). The DOL interprets "interference" to include "not

11 │ only refusing to authorize FMLA leave, but discouraging an

12 │ employee from using such leave." Id. The regulations specify one

13 │ form of employer interference: "employers cannot use the taking

14 │ of FMLA leave as a negative factor in employment actions." 29

15 │ C.F.R. § 825.220(c).

16 │     Under the FMLA, 29 U.S.C. § 2601, *et seq.*, the employee must

17 │ establish: (1) she was eligible for the FMLA's protections, (2)

18 │ her employer was covered by the FMLA, (3) she was entitled to

19 │ leave under the FMLA, (4) she provided sufficient notice of her

20 │ intent to take leave, and (5) her employer denied her FMLA

21 │ benefits to which she was entitled. *Sanders v. City of Newport*, —

22 │ F.3d —, 08-35996, 2011 WL 905998, *5 (9th Cir. Mar. 17, 2011)

23 │ (*citing Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir.2006)).

24 │     The parties agree: (1) Plaintiff was eligible for the FMLA's

25 │ protections. (2) FPF is covered by the FMLA.

26 │        1.   <u>Plaintiff's Entitlement To Take Leave To Care For</u>

27 │             <u>Her Father Who Suffered From A "Serious Medical</u>
     │             <u>Condition."</u>

28 │     The FMLA entitles employees to take 12 weeks off from work,

16

with or without pay "in order to care for the. . . parent of the
employee, if such. . . parent has a serious health condition." 29
U.S.C. § 2612(a)(1)(C). A "serious health condition" is an
illness, injury, impairment, or physical or mental condition that
involves:

   (A)      inpatient care in a hospital, hospice, or residential
            medical care facility; or

   (B)      continuing treatment by a health care provider.

   29 U.S.C. § 2611(11).

       The parties have a significant dispute over the nature and
extent of the evidence and the admissibility of the medical
testimony concerning the medical condition of Plaintiff's father,
Mr. Merlos. This dispute is resolved and Plaintiff's medical
evidence is admissible and considered.

       Aside from evidentiary objections, Defendant disputes
generally that Mr. Merlos had a serious medical condition, but
offers no contrary evidence. *See* Fed. Rules of Civ. Pro. 56(c).
Summary adjudication regarding serious medical condition is
GRANTED to Plaintiff.


            2.   Adequate Notice.

                 i.   Whether Plaintiff Gave Notice Of Her Need For
                      FMLA-Qualifiying Leave On November 19th,2007.

       The FMLA regulations set out two notice requirements: the
plaintiff must show that her notice was timely. 29 C.F.R. §
825.303(a). And, the notice must have been "sufficient to make
the employer aware that the employee needs FMLA qualifying leave,
and the anticipated timing and duration of the leave." 29 C.F.R.

17

§ 825.302(c). Once an employee invokes her FMLA rights by alerting her employer to her need for potentially qualifying leave, the regulations shift the burden to the employer to take certain affirmative steps to process the leave request. 29 C.F.R. § 825.303(b).

Plaintiff asserts that her November 19th notice was timely and that her statements to various FPF supervisors constitute sufficient notice. Defendant asserts that notice was not timely or sufficient. Specifically, Defendant contends that Plaintiff's leave was foreseeable, subjecting her to the FMLA's 30 days advance notice requirement. Defendant further argues Plaintiff's notice was not sufficient because she did not properly follow FPF's leave policies and procedures, despite invoking Family Leave under the FMLA and/or the CFRA pursuant to PFP policy on twelve prior occasions.

### a. Timeliness

"An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable." 29 CFR § 825.302(a). When the need for leave is not known in advance, "an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Under these circumstances, "[i]t is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." Id.

Defendant asserts that Plaintiff's November 19, 2007 request

for leave was foreseeable and Plaintiff should have provided 30 days notice as required under 29 CFR § 825.302. Defendant argues, assuming Mr. Merlos had a serious medical condition, Mr. Merlos' serious condition existed in October 2007 and did not become serious in November, as Plaintiff states. Because the serious condition was known to Plaintiff in October, Plaintiff should have requested leave at that time.

> Plaintiff's father only saw his medical provider one time, on October 22, 2007.
>
> . . .
>
> Plaintiff contends that the need for leave was unforeseeable and that her father took a turn for the worse on November 16th, 2007. However, there is no evidence. . . that indicates anything happened with her father's condition between October 22, 2007 and December 22, 2007, so if the trip was needed on November 16, 2007 it was based on [her] father's condition in October.
>
> (Doc. 51, Def.'s Oppo. at 24.)[13]

Defendant's argument that Mr. Merlos' condition did not "take a turn for the worse" in November is contradicted by Defendant's admission in the Unemployment Insurance hearing that FPF did not question Plaintiff's need for leave on November 19th to care for her father and Defendant's duty to inquire further if it had a question regarding the designation of leave. 29 CFR 825.303(b). However, if Mr. Merlos' condition was serious and

---

[13] Plaintiff asserts whether she provided documentation regarding her father's medical condition between October 22, 2007 and December 22, 2007 is irrelevant. (Doc. 58, Plt's Response to Def.'s UDF No. 61 at 26.) The documentation has a tendency to make the existence of a fact of consequence to the determination of the action — namely, the timing of Mr. Merlos' serious medical condition — more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401.

1   Plaintiff knew this before November, the timeliness of
2   Plaintiff's November 19th notice remains unclear. A disputed
3   issue of material fact exists on the timeliness of Plaintiff's
4   notice of need for leave. Summary adjudication on this issue is
5   DENIED.

6                  b.   Content of Notice

7        Whether the notice a Plaintiff provides is practical in
8   terms of its content depends on the facts and circumstances of
9   each individual case. 29 CFR § 825.303(a). Generally, whether the
10  notice is adequate is a question of fact. *See, e.g.*, *Mora v.*
11  *Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1209 (S.D. Cal. 1998)
12  (*citing Hopson v. Quitman County Hosp. & Nursing Home, Inc.*, 126
13  F.3d 635 (5th Cir.1997) ("[s]uch determinations are question of
14  fact and better left to the jury with its traditional function of
15  assessing human behavior and expectations")). Hence, even if
16  there is undisputed evidence, rational triers of fact could
17  nevertheless differ on whether the notice was adequate.
18  *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 976 (5th
19  Cir.1998).

20       The notice must have been "sufficient to make the employer
21  aware that the employee needs FMLA qualifying leave, and the
22  anticipated timing and duration of the leave." 29 C.F.R. §
23  825.303(c); *Amway Corp.*, 347 F.3d at 1134. Plaintiff need not
24  show that she expressly asserted rights under FMLA or even
25  mentioned FMLA, but that she stated leave was needed for a
26  potential FMLA-qualified reason. *Id*. As a general rule, "[t]he
27  critical question is whether the information imparted to the
28  employer is sufficient to reasonably apprise it of the employee's

request to take time off for a serious health condition." *Mora*,
16 F. Supp. 2d at 1209 (*quoting Manuel v. Westlake Polymers
Corp.,* 66 F.3d 758, 764 (5th Cir. 1995)). The employer is then
"expected to obtain any additional required information through
informal means." *Id.*

Citing *Greenwell v. State Farm Mutual Automobile Ins. Co.*,
486 F.3d 840 (5th Cir.2007), Defendant argues that the general
rule does not apply here because Plaintiff had sophisticated
knowledge of the FPF's FMLA process based on her prior experience
in taking leave on twelve occasions. In *Greenwell*, an employee
took leave to tend to her sick child. When she called her
supervisor she stated that the child had fallen and was scared
and bruised and she needed to take leave. *Id.* at 841. The
plaintiff's supervisor allegedly mentioned FMLA but did not
request documentation. *Id.* When the plaintiff returned to work
she chose not to request FMLA protection for her absence because
she did not have medical documentation. *Id.* She was terminated
based on her absence. *Id.*

The Fifth Circuit addressed whether the plaintiff's notice
sufficiently expressed that her need for leave was based on a
serious medical condition. *Id.* at 842-44. The court found that
the plaintiff's communication with her supervisor did not
sufficiently connect her absence to a medical condition rising to
the level of seriousness protected under FMLA. *Id.* at 844. The
plaintiff's son had asthma, which is an FMLA qualifying
condition, but the plaintiff did not tell her supervisor that his
asthma was the reason she needed leave. *Id.* at 843. After the
plaintiff returned from her leave, her supervisor told her to

1  clear her absence through FMLA by providing medical

2  documentation. *Id*. The plaintiff refused to provide the

3  documentation, arguing that the employer already had sufficient

4  documentation of her son's asthma from two prior leaves she had

5  taken under the FMLA. *Id*. The court found her failure to give

6  medical documentation further supported the employer's argument

7  that she failed to give sufficient FMLA-notice. *Id*. The court

8  held that "[w]ithout sufficient notice specific to her son's

9  condition ... State Farm lacked the information to determine

10  whether [the plaintiff's] absence qualified for FMLA protection."

11  *Id.* at 844.

12  *Greenwell* is distinguishable. There, notice was insufficient

13  because it failed to identify the son's asthma as the reason for

14  the absence, and the plaintiff *also* chose not to provide medical

15  documentation, which coincidently violated the employer's express

16  policy. These circumstances were insufficient to provide the

17  employer notice to make a determination of whether the leave was

18  FMLA qualifying.

19  The fact that Plaintiff, here, knew Defendant's FMLA

20  procedures does not excuse FPF's obligation to inquire further as

21  to the reason for Plaintiff's leave. It is the employer's

22  obligation to designate whether leave is FMLA qualifying "in all

23  circumstances" regardless of the employee's knowledge of the FMLA

24  procedures. *See* 29 C.F.R. § 825.208(a). Defendant admits that

25  Plaintiff stated to, at least, her direct supervisor, Linda

26  Mendoza, that she needed leave in order to care for her sick

27  father in Guatemala. (Doc. 63, Decl. Terman, Ex. L, Plt's Dep. at

28  65:1-12.) This is triggered Defendant's obligation to inquire

1  further.

2       Once an employee invokes her FMLA rights by alerting her
3  employer to her need for potentially qualifying leave, the
4  regulations shift the burden to the employer to make further
5  inquiry if additional information is needed before the employer
6  can process the leave request. *See* 29 C.F.R. § 825.303(b) ("[T]he
7  employer should inquire further of the employee if it is
8  necessary to have more information about whether FMLA leave is
9  being sought ...."). "The employer will be expected to obtain any
10  additional required information through informal means." Id.

11      Defendant asserts that it fulfilled its obligation to
12  inquire further; but that Plaintiff unequivocally declined to
13  invoke FMLA leave. After Plaintiff explained that she needed
14  leave to tend to her ill father in Guatemala, Defendant asserts
15  further inquiry was completed when Plaintiff's direct supervisor
16  Linda Mendoza then asked twice through translator, Alfonso
17  Flores, whether Plaintiff wanted medical leave time off following
18  her "vacation." Mr. Flores testified at his deposition:

19      Q: Linda Mendoza came into your office and asked you to come
20      into hers; is that right?

21      A. Yes.

22      Q. And then she said what?

23      A. 'Can you do me a favor? I need you to translate to Maria
24      [Plaintiff] to make sure she understands in her language.'

25      Q. And what was it that she asked you to translate?

26      A. If Maria needs time off.

27      Q. Time off?

28      A. Medical leave time off.

23

1       . . .

2       Q. And Maria said no?

3       A. Yes.

4       . . .

5       Q. Maria said, 'No' twice?

6       A. Yes.

7       Q. And then you said Linda says, 'Tell her if she needs more

8       time, she needs to go to HR'?

9       A. Yes.

10      Q. And did you translate that part?

11      A. Yes.

12          (Doc. 59, Decl. Skol, Ex. O, Alfonso Dep., 24:15-24; 25:17-

13      18, 24-25; 26:1-5).

14          Defendant contends that during this inquiry Plaintiff could

15      have, yet did not, assert her right to medical leave either for

16      her scheduled two week leave or for anytime following. Plaintiff

17      denies that Mr. Flores was present during her conversation with

18      Linda Mendoza and denies this conversation ever took place.

19      (Doc. 63, Decl. Terman, Ex. L, Plt.'s Dep., 67:5-16.) This

20      hearsay testimony is admissible to show there was an alleged

21      conversation, which Plaintiff disputes. Plaintiff asserts that

22      she did request more time from Linda Mendoza and was refused.

23      (Id. at 65:1-12.) This conflicting testimony creates a triable

24      issue of material fact whether notice was sufficient and as to

25      the extent of FPF's inquiry into whether Plaintiff was invoking

26      FMLA leave for her father's serious medical condition.

27          Plaintiff testified that she spoke to two other supervisors

28      regarding her leave, but that neither made further inquiry into

                                    24

1   the nature or designation of her leave. (Doc. 63, Decl. Terman,

2   Ex. L, Plt.'s Dep., 68:8-15; Ex. S, Moises Lemus Dep., 22:14-18.)

3   Plaintiff cites no authority which requires that *every*

4   supervisor, including those who are not her direct supervisors,

5   inquire into her leave. Disputed questions of material fact

6   remain about all the circumstances of her leave request, its

7   adequacy, and sufficiency of notice to both FPF and Plaintiff.

8   Summary adjudication on the Defendant's compliance with its duty

9   of inquiry under § 825.303(b) is DENIED.

10

11            **2.  Whether The CBA Three Day Rule Justified**
                     **Plaintiff's Termination**
12
13       Defendant argues whether or not Plaintiff's November 19th

14  leave request was sufficient, FPF was "well within its rights to

    terminate Plaintiff according to its standard leave procedures."
15
    Plaintiff argues that her November 19th notice was sufficient to
16
    cover the two weeks initially requested and the indefinite period
17
    after, or, in the alternative, Mr. Mendoza "gave [Plaintiff]
18
    permission to take more time so long as she returned from
19
    Guatemala with a note from her father's doctor."
20
         Applicable regulations state that, when leave is needed, an
21
    employee must give her employer notice about the "anticipated
22
    timing and duration of the leave." 29 C.F.R. § 825.302(c).
23
    "[N]otice need only be given one time, but the employee shall
24
    advise the employer as soon as practicable if dates of scheduled
25
    leave change [] are extended, or were initially unknown."  29
26
    C.F.R. § 825.302(a). "As soon as practicable" means "within no
27
    more than one or two working days of learning of the need for
28

                              25

1  leave." Id. However, "an employer [may] impose[] lesser notice
2  requirements on employees." CFR 825.302(g).

3      Assuming *arguendo* that Plaintiff's original November 19th
4  notice was given as she describes it, she contends that her
5  initial notice covered her two week scheduled leave and the
6  indefinite period after. Plaintiff's argument is unpersuasive.
7  The regulations require that an employee keep the employer
8  abreast of changing circumstances. *See e.g.*, 29 CFR §§ 825.208,
9  825.302, 825.303. This is consistent with the FMLA's purpose to
10 achieve a balance that reflects the needs of both employees and
11 their employers. 29 U.S.C. § 2601; *Sanders v. City of Newport*, —
12 F.3d. —, 08-35996, 2011 WL 905998 (9th Cir. Mar. 17, 2011); *see
13 also Collins v. NTN–Bower Corp.*, 272 F.3d 1006, 1008 (7th
14 Cir.2001) ("[employers are] entitled to the sort of notice that
15 will inform them not only that the FMLA may apply but also when a
16 given employee will return to work.")). During her scheduled two
17 week leave, Plaintiff learned she would need extended time to
18 care for her father. (*See* Doc. 43, Decl. Terman, Ex. R, 25:13-17)
19 ("On the 5th of December. That's when I saw that my dad was very
20 ill and I couldn't come back.") By not contacting FPF within
21 either the FMLA's two working days requirement or, at a minimum,
22 the CBA three day requirement, Plaintiff did not provide timely
23 notice of her need to take additional FMLA leave. Aside from
24 Plaintiff's self-serving and uncorroborated assertion that she
25 made one failed attempt at a phone call and to send a fax,
26 Plaintiff made no other effort to keep FPF apprised of her need
27 for leave, and was absent without notice to FPF for approximately
28 three weeks after her scheduled leave ended.

1    Plaintiff rejoins that FPF imposed a lesser notice

2  requirement on her; i.e., neither the FMLA requirement nor the

3  Three Day Rule applied, because Edward Mendoza allegedly gave

4  Plaintiff permission to stay in Guatemala indefinitely if she

5  returned with a doctor's note.[14]

6         I believed that I had been told by Eddie Mendoza that I
          could go to Guatemala, using my two weeks of vacation, and
7         if I needed more time than that, I could return with a note
          from my father's doctor, and that I could then return to my
8         job.

9    (Doc. 63, Decl. Terman, Ex. A, Decl. Plt. at ¶ 11.)

10   Defendant argues each of the supervisors Plaintiff spoke

11 with informed her that if she wished to extend her time, she must

12 do so by contacting HR. Defendant invokes Plaintiff's knowledge

13 of the Three Day Rule and its application as well as FMLA's

14 _____

15     [14] Defendant asserts that Plaintiff's declaration is a
16 "sham" because her declaration "contradicts earlier sworn
   testimony." (Doc. 72, Def.'s Reply at 4.)  Specifically,
17 Defendant states that Plaintiff's declaration contradicts her
   under-oath statements from the Unemployment Insurance hearing
18 that she was aware of the Three Day Rule, but did not abide by
   it. (Id.) Notably, Defendant asserts this argument for the first
19 time in its Reply, does not provide a full legal analysis, and
   does not provide a complete description of Plaintiff's testimony
20 at the Unemployment Insurance hearing.
21     Not every instance of testimonial contradiction is a sham.
   *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir.
22 1991). A declaration is a "sham" only when it "*flatly contradicts*
23 earlier testimony in an attempt to 'create' an issue of fact and
   avoid summary judgment." *Id.*(emphasis added.) While Plaintiff did
24 state at the Unemployment Insurance hearing that she was aware of
   the Three Day Rule and its application, she also stated that she
25 relied on the "word" of Edward Mendoza who purportedly allowed
26 her indefinite leave. (*See* Doc. 43, Decl Terman, Ex. R at 32:7-
   10.) Her declaration does not "flatly contradict" her
27 Unemployment Insurance hearing testimony and her declaration is
28 not excluded as a sham.

1  procedures and obligations she had previously invoked to use

2  medical leave on twelve prior occasions, on which she followed

3  the correct procedures. The parties' dispute on the issue of the

4  Three Day Rule's application creates a triable dispute of

5  material fact. Summary adjudication on this issue is DENIED.

6

7       C. **PLAINTIFF'S CLAIMS**

8       1.  **Interference (First and Third Claim)**

9       Under DOL regulations, the mischaracterization of

10  Plaintiff's FMLA leave as personal leave qualifies as

11  "interference" with her leave. A violation of the FMLA simply

12  requires that the employer deny the employee's entitlement to

13  FMLA leave. 29 C.F.R. § 825.220(a)(1) & (b); *Amway Corp.*, 347

14  F.3d at 1135. A violation of the FMLA simply requires that the

15  employer deny the employee's entitlement to FMLA leave. *Id.* When

16  an employer fails in its responsibility to assess an employee's

17  entitlement to FMLA leave it denies that employee a substantive

18  right under FMLA. Denial of an employee's right to FMLA leave

19  violates the FMLA. *Amway Corp.*, 347 F.3d at 1135.

20       Assuming *arguendo* that FMLA applies, Defendant argues that

21  Plaintiff was not ultimately denied FMLA rights because there was

22  no practical distinction between the personal leave she was

23  granted and the FMLA leave to which she was entitled; i.e.,

24  because Plaintiff was ultimately allowed two weeks of vacation no

25  injury resulted from its designation as vacation leave. Plaintiff

26  asserts that as a result of Defendant's mischaracterization of

27  her November 19th request, she was not provided with proper

28  notice of her obligations and she cannot be charged with

1 violating those obligations. Instead, Plaintiff relied on Edward

2 Mendoza's alleged permission for indefinite leave which resulted

3 in her termination.

4     Assuming FMLA's application, the parties dispute still

5 creates a triable issue of material fact. Defendant's motion for

6 summary judgment is DENIED on the first interference claim.

7     2.   "Discrimination"[15] (Second and Fourth Claim)

8     Under the FMLA, it is unlawful for an employer to "'use the

9 taking of FMLA leave as a negative factor in employment actions,

10 such as hiring, promotions or disciplinary actions.'" *Bachelder*,

11 259 F.3d at 1122 (quoting 29 C.F.R. § 825.220(c)). Under Ninth

12 Circuit case law, if an employer uses an employee's taking of

13 FMLA leave as a "negative factor" to make "adverse employment

14 decisions," including termination, the employer interferes with

15 the employee's exercise of FMLA rights in violation of §

16 2615(a)(1). *Bachelder*, 259 F.3d at 1122-23; *see also Amway*, 347

17

18 _____

19    [15] **Plaintiff asserts "discrimination" under FMLA. "[**W]here
an employee is punished for opposing unlawful practices by the
20 employer, the issue [] becomes one of discrimination and
retaliation." **Amway Corp.**, 347 F.3d at 1136 (citing **Diaz v. Fort**
21 **Wayne Corp.**, 131 F.3d 711, 712 (7th Cir.1997). On the other hand,
22 **"FMLA [interference] claims 'do not depend on discrimination'**
**since the issue is not that 'the employer treated one employee**
23 **worse than another' but that every employee has substantive**
**rights under FMLA that the employer must respect."** *Id.*
24 **Plaintiff's complaint states, "Defendant discriminated against**
**[P]laintiff by discharging her when she exercised her right to**
25 **take FMLA leave." (FAC ¶ 69.) Plaintiff's assertions do not meet**
**the requirements of a FMLA discrimination claim. Rather,**
26 Plaintiff's "discrimination" claim is an interference claim.
Specifically, Plaintiff's second claim is, interference for
27 termination while on FMLA leave, as opposed to, discrimination
28 based on opposition to alleged unlawful practices.

1  F.3d at 1133 n. 7.

2      To establish an interference claim under the FMLA, a
3  plaintiff must show that (1) she took FMLA-protected leave; and
4  (2) it constituted a "negative factor" in an adverse employment
5  decision. *Bachelder*, 259 F.3d at 1125. A plaintiff "can prove
6  this claim, as one might any ordinary statutory claim, by using
7  either direct or circumstantial evidence, or both. No scheme
8  shifting the burden of production back and forth is required."
9  *Id.* (internal citations omitted).

10     There is no question that Plaintiff's termination was an
11 adverse employment action. Material dispute remains as to whether
12 Plaintiff properly took FMLA-protected leave. The motion for
13 summary judgment on Plaintiff's second interference claim is
14 DENIED.

15     3.   <u>Failure to Prevent Discrimination Pursuant to Cal. Gov.</u>
          <u>Code § 12940(k)(Fifth Claim)</u>
16
17     The Ninth Circuit and California courts have recognized that
18 Cal. Govt.Code § 12940(k) ("FEHA") creates an actionable
   statutory tort for failure to take all reasonable steps necessary
19
   to prevent discrimination, when such a tort is predicated upon a
20
   specific factual finding that discrimination actually occurred.
21
   *See Kohler v. Inter-Tel Technologies*, 244 F.3d 1167, 1174 n. 4
22
   (9th Cir 2001); *see also Trujillo v. North County Transit Dist.*,
23
   63 Cal.App. 4th 280, 286, 287-289 (1998). FEHA only prohibits
24
   discrimination based on "sex, race or any other protected
25
   characteristic." 42 U.S.C. § 2000e-2(a)(1).
26
27     Defendant moves for summary judgment on Plaintiff's claim
28 for failure to prevent discrimination, yet Plaintiff advances no

1  specific opposition to Defendant's motion. Absent evidence to

2  support a claim Plaintiff was discriminated against because of

3  her race, gender, or other FEHA-protected characteristic, summary

4  judgment for Defendant on the fifth cause of action is GRANTED.

5       **4.   Wrongful Termination In Violation Of Public Policy
           (Sixth Claim)**

6

7       Under California law, employment is at-will unless the

   parties contract otherwise. *See* Cal. Lab. Code § 2922. California

8
   courts, however, have carved out a specific exception to this

9
   general rule: an employer will be liable if it terminates an

10
   employee in violation of public policy. *See Stevenson v. Superior*

11
   *Court*, 16 Cal.4th 880, 66 Cal.Rptr.2d 888 (1997).

12

13      *Stevenson* requires four factors to establish a public policy

   violation as the basis for a wrongful discharge claim:
14

15          First, the policy must be supported by either constitutional
            or statutory provisions. Second, the policy must be 'public'
16          in the sense that it 'inures to the benefit of the public'
            rather than serving merely the interests of the individual.
17          Third, the policy must have been articulated at the time of
            the discharge. Fourth, the policy must be 'fundamental' and
18          'substantial.'

19      *Id.* at 889-90, 66 Cal.Rptr.2d 888; *see also Gantt v. Sentry*

20  *Insurance*, 1 Cal.4th 1083, 1095, 4 Cal.Rptr.2d 874 (1992)

21  (overruled on other grounds by *Green v. Ralee Eng'g Co.*, 19

   Cal.4th 66, 90, 78 Cal.Rptr.2d 16(1998)).
22

23      Discharge in violation of the CFRA has been held, as a

24  matter of law, to constitute wrongful discharge in violation of

   public policy. *See Nelson v. United Technologies*, 74 Cal.App.4th
25
   597, 612, 88 Cal.Rptr.2d 239 (1999); *see also Moreau v. Air*
26
   *France*, C-99-4645 VRW, 2002 WL 500779, at *8 (N.D. Cal. Mar. 25,
27
   2002), aff'd, 343 F.3d 1179 (9th Cir. 2003) opinion amended and
28

                                  31

1  superseded on denial of reh'g, 356 F.3d 942 (9th Cir. 2004). As
2  to its federal counterpart, the Ninth Circuit has found,
3  "violation of the FMLA also must constitute a violation of public
4  policy." *Amway Corp.*, 347 F.3d at 1137.

5      Because there is a triable issue of material fact as to
6  whether Plaintiff was terminated in violation of the FMLA,
7  summary judgment must also be DENIED as to the sixth claim
8  regarding whether her termination violated public policy.

9      5.   Failure to Promptly Pay Wages Owed At Termination
            (Seventh Claim)
10
11      California Labor Code ("Labor Code") section 201 requires an
12  employer pay a terminated employee all earned wages immediately,
13  or upon termination. Labor Code § 227.3 requires an employer to
14  compensate a terminated employee for all vested vacation
15  immediately, or upon termination. Further, Labor Code § 203
16  provides that if an employer fails to pay a fired worker
17  immediately, it is liable to the employee for a penalty. This
18  waiting time penalty is equivalent to the employee's daily wage
19  for every day that the earned wages are not paid, with a maximum
20  penalty of 30 days' pay. Labor Code § 203.

21      Plaintiff was terminated December 12, 2007. In her
22  complaint, Plaintiff alleges: "Defendant failed to fully
23  compensate Plaintiff at the time of her termination by failing to
24  pay her all earned wages, including compensation for vested
25  vacation." Defendant paid Plaintiff $2,330.40 on March 3, 2010.
26  (Doc. 93.)

27      At the oral hearing, Defendant asserted that the parties had
28  "settled" the claim. Defendant provides no evidence of a

1  negotiation nor a document detailing the terms of a settlement
2  agreement regarding this claim. (*See* Doc. 93.) No notice of any
3  settlement was given. *See* Local Rule, 160 (a) ("When an action
4  has been settled . . . it is the duty of counsel to inform the
5  courtroom deputy clerk and the assigned Court's chambers
6  immediately.") Further, there was no meeting of the minds
7  regarding any "settlement," as Plaintiff's counsel asserted at
8  the oral hearing that Plaintiff was, in fact, the prevailing
9  party on this claim. (*Stewart v. Preston Pipeline Inc.*, 134 Cal.
10 App. 4th 1565, 1585, 36 Cal. Rptr. 3d 901, 918 (Cal. Ct. App.
11 2005) ("A settlement agreement is a contract, and the legal
12 principles [that] apply to contracts generally apply to
13 settlement contracts"); *see also Bustamante v. Intuit, Inc.*, 141
14 Cal. App. 4th 199, 215, 45 Cal. Rptr. 3d 692, 704 (Cal. Ct. App.
15 2006) ("[T]he failure to reach a meeting of the minds on all
16 material points prevents the formation of a contract.")

17     No settlement was reached. Plaintiff is the prevailing party
18 on this unpaid wages claim. The issue of the penalty and
19 attorneys fees remains in dispute. Summary judgment cannot be
20 granted.

21

22     D. <u>PUNITIVE DAMAGES</u>

23     Plaintiff seeks punitive damages on her California law
24 claims for failure to prevent discrimination and wrongful
25 termination in violation of public policy, as well as penalty
26 damages for her claim for failure to promptly pay wages owed.
27     1.   <u>FEHA Claims</u>
28     Defendant contends that the Plaintiff's punitive damages

33

1  claim fails because she does not "allege facts that would support
2  [] an allegation" of "oppression, fraud or malice." Plaintiff
3  rejoins that Defendant's supervisors and managers, Edward
4  Mendoza, Linda Mendoza, and John Dias, "acted in willful and
5  intentional disregard of [Plaintiff's] job-protected leave
6  rights."

7       Punitive damages are never awarded as a matter of right, are
8  disfavored by the law, and should be granted with the greatest of
9  caution and only in the clearest of cases. *Henderson v. Security*
10 *Pacific National Bank*, 72 Cal.App.3d 764, 771, 140 Cal.Rptr. 388
11 (1977). California Civil Code Section 3294(a) provides for
12 punitive damages: "where it is proven by clear and convincing
13 evidence that the defendant has been guilty of oppression, fraud
14 or malice." The clear and convincing standard "'requires a
15 finding of high probability. . . so clear as to leave no
16 substantial doubt; sufficiently strong to command the
17 unhesitating assent of every reasonable mind.'" *Scott v. Phoenix*
18 *Sch., Inc.*, 175 Cal. App. 4th 702, 715, 96 Cal. Rptr. 3d 159, 170
19 (Cal. Ct. App. 2009), review denied (Sept. 23, 2009) (internal
20 citations omitted)(*citing Lackner v. North*, 135 Cal.App.4th 1188,
21 1211–1212, 37 Cal.Rptr.3d 863)(2006). "Something more than the
22 mere commission of a tort is always required for punitive
23 damages. There must be circumstances of aggravation or outrage,
24 such as spite or 'malice,' or a fraudulent or evil motive on the
25 part of the defendant, or such a conscious and deliberate
26 disregard of the interests of others that his conduct may be
27 called wilful or wanton." *Id.* (*citing Taylor v. Superior Court*,
28 24 Cal.3d 890, 894, 895, 157 Cal.Rptr. 693 (1979).

1    Malice is defined as "conduct which is intended by the
2  defendant to cause injury to the plaintiff or despicable conduct
3  which is carried on by the defendant with a wilful and conscious
4  disregard of the rights or safety of others."  Cal. Civ. Code §
5  3294(c)(1).  California Civil Code Section 3294(c)(2) defines
6  oppression as "despicable conduct that subjects a person to cruel
7  and unjust hardship in conscious disregard of that person's
8  rights."  Fraud is "an intentional misrepresentation, deceit or
9  concealment of a material fact known to the defendant or thereby
10  depriving a person of property or legal rights or otherwise
11  causing injury.  Cal. Civ. Code § 3294(c)(3).

12    In ruling on a summary judgment or summary adjudication
13  motion, "the judge must view the evidence presented through the
14  prism of the substantive [clear and convincing] evidentiary
15  burden. . . . [¶] [This] holding that the clear-and-convincing
16  standard of proof should be taken into account in ruling on
17  summary judgment motions does not denigrate the role of the jury.
18  It by no means authorizes trial on affidavits. Credibility
19  determinations, the weighing of the evidence, and the drawing of
20  legitimate inferences from the facts are jury functions, not
21  those of a judge." (*Anderson v. Liberty Lobby, Inc.* (1986) 477
22  U.S. 242, 254-255, 106 S.Ct. 2505, 91 L.Ed.2d 202; *see also*
23  *Stewart v. Truck Ins. Exchange*, 17 Cal.App.4th 468, 482, 21
24  Cal.Rptr.2d 338 (1993).

25    Although the "clear and convincing" evidentiary standard is
26  stringent, it does not impose the obligation to "prove" a case
27  for punitive damages at summary judgment. *Am. Airlines, Inc. v.*
28  *Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1049,

1  117 Cal. Rptr. 2d 685, 709 (Cal. Ct. App. 2002). However, where

2  the plaintiff's ultimate burden of proof will be by clear and

3  convincing evidence, the higher standard of proof must be taken

4  into account in ruling on a motion for summary judgment or

5  summary adjudication, since if a plaintiff is to prevail on a

6  claim for punitive damages, it will be necessary that the

7  evidence presented meet the higher evidentiary standard.  *Id.*

8  (*citing Basich v. Allstate Ins. Co.,* 87 Cal.App.4th 1112, 1118-

9  1120, 105 Cal.Rptr.2d 153 (2001).

10     Plaintiff's Opposition merely re-asserts her argument that

11 her managers failed to: investigate her leave designation, apply

12 FMLA to her leave, apprise her of her rights and obligations; yet

13 terminated her despite their wrongdoing.

>         Both Ed Mendoza and Linda Mendoza knew that plaintiff had
>         traveled to Guatemala to care for her ill father, but they
>         nevertheless chose to terminate Ms. Escriba. Mr. Mendoza . .
>         . even granted Ms. Escriba permission to extend her leave so
>         long as she returned from Guatemala with a doctor's note.
>         Linda Mendoza, by her own account, willfully ignored signs
>         that plaintiff was — at the least — confused about how to
>         extend her leave. However, neither Ms. Mendoza nor Mr.
>         Mendoza relayed any of this information to the Human
>         Resources office. Nor did they attempt to contact Ms.
>         Escriba to clarify the procedure she was to follow, or even
>         to contact her husband, who also worked at the Company.
>         Instead, they abruptly terminated an employee with 18 years
>         of service and no prior attendance related discipline.
>
>         John Dias also willfully disregarded Ms. Escriba's rights
>         when he refused to reinstate her.

   (Doc. 57, Plt.'s Oppo. at 27-28) (internal citations
omitted).

   Adding pejorative language and the word "willfully" does not

establish a claim for punitive damages as a matter of law. *Scott*

*v. Phoenix Schools, Inc.*, 175 Cal. App. 4th 702, 717, 96 Cal.

1  Rptr. 3d 159, 171 (Cal. Ct. App. 2009), *review denied* (Sept. 23,
2  2009)2009 WL 1877532 (Cal. App. 3d Dist. 2009) (finding, wrongful
3  termination, without more, will not sustain a finding of malice
4  or oppression, as required for punitive damages). Plaintiff has
5  not provided any direct evidence of fraudulent conduct. Plaintiff
6  has not shown collusion between her supervisors to wrongfully
7  terminate her, or any past or present expression of animus toward
8  her by any Defendant. She had an extensive leave history which
9  was not held against her. FPF did not hide the alleged wrongful
10 reason it terminated Plaintiff. *See Id.* (finding that because the
11 plaintiff did not assert or prove that her supervisors conspired
12 to hide their wrongful termination of her, she could not be
13 awarded punitive damages.) Plaintiff reads an evil motive into
14 facts that describe nothing more than the basic elements of
15 wrongful termination. The record is devoid of any animus toward
16 her. Summary judgment is GRANTED to Defendant on Plaintiff's
17 state law punitive damages claim.

18      2.   <u>Failure To Timely Pay Wages</u>

19      At oral argument, the parties disagreed whether FPF's
20 payment of Plaintiff's wages after the lawsuit was filed entitles
21 her to prevailing party status on her seventh claim. She is the
22 prevailing party on the seventh claims because she had to file a
23 lawsuit to obtain payment and there was no settlement.
24 Plaintiff's claim for penalty damages on the seventh cause of
25 action survives. Summary judgement is DENIED as to this penalty
26 damages claim.

27

28      E. <u>AFFIRMATIVE DEFENSES</u>

37

Plaintiff moves for summary judgment regarding Defendant's affirmative defenses raised in Defendants' Answer to the FAC:[16]

1.  Unclean Hands.
2.  Waiver, estoppel, Laches, Acquiesce and/or Consent.
3.  Good Faith.
4.  Mitigation of Damages.

### 1.   Unclean Hands

The doctrine of unclean hands requires unconscionable, bad faith, or inequitable conduct by the plaintiff in connection with the matter in controversy. *Dickson, Carlson & Campillo v. Pole*, 83 Cal.App.4th 436, 446, 99 Cal.Rptr.2d 678 (2000); *General Elec. Co. v. Superior Court,* 45 Cal.2d 897, 899-900, 291 P.2d 945 (1955). Unclean hands applies when it would be inequitable to provide the plaintiff any relief, and provides a complete defense to both legal and equitable causes of action. *Dickson, Carlson & Campillo*, 83 Cal.App.4th at 447, 99 Cal.Rptr.2d 678; *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal.App.4th 970, 978, 90 Cal.Rptr.2d 743 (1999).

"Whether the defense applies in particular circumstances depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." *Dickson, Carlson & Campillo*, 83 Cal.App.4th at 447, 99 Cal.Rptr.2d 678; *Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 56, 58 Cal. Rptr. 3d 225, 235-36 (Cal. Ct. App. 2007).

---

[16] In its Answer, Defendant asserted fourteen affirmative defenses. (Doc. 6). By its Opposition, Defendant withdrew its first, second, fourth, eight, and fourteenth affirmative defense. (Doc. 51, at 37). Defendant asserts its fifth and thirteenth affirmative defenses as one affirmative defense. (Id. at 36). Defendant's tenth, eleventh and twelfth affirmative defenses are not the subject of summary judgment.

38

1  Further, "it is fundamental to [the] operation of the doctrine
2  that the alleged misconduct by the plaintiff relate directly to
3  the transaction concerning which the complaint is made." *Dollar*
4  *Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th
5  Cir. 1989).

6      Whether the testimonial disputes are the result of
7  misunderstanding in translation or intentional falsehoods present
8  credibility issues. Summary judgment is DENIED as to Defendant's
9  unclean hands affirmative defense.

> ### 2.   Waiver, Estoppel, Laches, Acquiescence, and/or Consent.

10

11      Defendant asserts Plaintiff's claims are barred by the
12  doctrines of waiver, estoppel, laches, acquiescence, and/or
13  consent . However, Defendant admits in its Opposition that
14  Plaintiff did not waive her FMLA rights. (Doc. 51, Def.'s Oppo.
15  at 36.) The law does not allow Plaintiff to waive her FMLA
16  rights. 29 CFR 825.220(d) ("employees cannot waive, nor may
17  employers induce employees to waive, their rights under FMLA.")
18  There is no triable issue of fact as to consent.  Summary
19  judgment is GRANTED to Plaintiff on Defendant's affirmative
20  defenses of waiver, estoppel, laches, acquiescence, and/or
21  consent.

22

> ### 3.   Good Faith

23

24      Defendant asserts "[t]he defense of good faith is, at the
25  very least applicable to the issue of liquidated damages and
26  punitive damages." (Doc. 51, Def.'s Oppo. at 37.) The employer's
27  good faith is not pertinent to the question of liability under
28  the FMLA. *Amway Corp.*, 347 F.3d at 1135; *Bachelder,* 259 F.3d at

1   1130. It is pertinent only to the question of damages. *Id.*

2       Defendant contends it has provided "ample evidence that

3   Defendant [] acted in good faith in granting Plaintiff's vacation

4   and advising her to obtain more leave in addition to her

5   vacation." Plaintiff rejoins that "[D]efendant [] has failed to

6   provide any factual support to its Reduction of Damages

7   defense." (Doc. 77, Plt's Reply at 21.) Plaintiff's argument

8   fails as discussed above there is a total dispute about who is

9   telling the truth. Defendant has provided some facts regarding

10  good faith. Summary judgement is DENIED regarding Defendant's

11  good faith defense.

12              **4.   Mitigation of Damages**

13      Under the avoidable consequences doctrine a person injured

14  by another's wrongful conduct will not be compensated for damages

15  that the injured person could have avoided by reasonable effort

16  or expenditure. *State Dept. of Health Services v. Superior Court,*

17  31 Cal. 4th 1026, 1043, 79 P.3d 556, 564 (2003).

18      Defendant offer no facts as to how Plaintiff failed to

19  mitigate her damages. Defendant's Opposition only provides:

20          This affirmative defense relates to the issue of Plaintiff's
            failure to mitigate her damages which is a question of fact.
21          . . Plaintiff has not presented any evidence of her damages.

22

23      (Doc. 51, Def.' Oppo. at 37.)

24      In order to find a genuine issue of fact, the court must be

25  provided with at least one material disputed fact. However,

26  absent proof of any damages by Plaintiff, it is impossible for

27  Defendant to prove Plaintiff's failure to mitigate. *See* Fed. R.

28  Civ. Pro. 56 (d). Summary judgment is DENIED as to Defendant's

**40**

1  mitigation affirmative defense.

2                         V. <u>CONCLUSION.</u>

3      For the reasons cited above:

4

5      1.    Plaintiff and Defendant FPF's motions on the first and

6            third claims regarding interference for

7            mischaracterizing Plaintiff's leave in violation the

8            FMLA and CFRA are DENIED.

9

10     2.    Plaintiff and Defendant's motions on the second and

11           fourth claims regarding interference for termination of

12           Plaintiff in violation of the FMLA and CFRA are DENIED.

13

14     3.    Defendant's motion regarding the fifth claim for the

15           failure to prevent discrimination under the FEHA is

16           GRANTED.

17

18     4.    Defendant's motion regarding the sixth claim for

19           wrongful termination in violation of public policy is

20           DENIED.

21

22     5.    Plaintiff is the prevailing party regarding the failure

23           to promptly pay wages owed.

24

25     6.    Defendant's motions regarding penalty damages for the

26           claims arising under FEHA are GRANTED.

27

28     7.    Defendant's motion regarding punitive damages for

                              41

1        failure to promptly pay wages owed is DENIED.

2

3    8.   Plaintiff's motion regarding the affirmative defense of

4         unclean hands is DENIED.

5

6    9.   Plaintiff's motion regarding the affirmative defenses

7         of waiver, estoppel, laches, acquiescence, and/or

8         consent is GRANTED.

9

10   10.   Plaintiff's motion regarding the affirmative defense

11         of good faith is DENIED.

12

13   11.   Plaintiff's motion regarding the affirmative defense of

14         mitigation of damages is DENIED.

15

16    A Joint Pretrial Conference is scheduled for filing Monday,

17 June 6, 2011 at 3:00 p.m. Defendant shall submit a form of order

18 consistent with this decision on or before June 7, 2011.

19

20 SO ORDERED

21 Dated: June 3, 2011            /s/ Oliver W. Wanger

22                          Oliver W. Wanger
                      United States District Judge
23

24

25

26

27

28

42