1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

FOR THE EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| MARIA ESCRIBA, | 1:09-CV-1878 OWW MJS |
| Plaintiff, | ORDER RE: PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE A NEW TRIAL, AND MOTION TO AMEND THE JUDGMENT (DOC. 221) |
| v. | |
| FOSTER POULTRY FARMS, a California corporation, | |
| Defendant. | |

9
10
11
12
13
14
15
16

17                    I. **INTRODUCTION.**

18      Plaintiff Maria Escriba brings this motion for judgment as a

19   matter of law ("JMOL"), or in the alternative, motion for new

20   trial following jury verdicts in a five day trial. The jury found

21   that Plaintiff had not given Defendant Foster Poultry Farms

22   ("FPF") sufficient notice to take leave pursuant to the Family

23   Medical Leave Act ("FMLA") or California Family Rights Act

24   ("CFRA").[1] Accordingly, Plaintiff was not at any time under the

25

26

27   _____

28   [1] The parties address the notice requirements of the FMLA, but do not specifically address the notice requirements of the CFRA. FMLA and CRFA claims are substantively identical. *See e.g., Xin Liu v. Amway Corp.*, 347 F.3d 1125,

1

protections of the FMLA or CFRA and not entitled to judgment on her FMLA/CFRA claims.

Plaintiff contends that informing her supervisors of her FMLA-qualified reason for leave equates to sufficient notice under FMLA and as such "there is no legally sufficient evidentiary basis to support the verdict for [D]efendant." Defendant opposes Plaintiff's motions, asserting that there is substantial evidence that FPF complied with the FMLA requirements and Plaintiff refused to exercise her right to take FMLA leave, amounting to insufficient notice.

Plaintiff further moves to amend the Judgment as Plaintiff contends she is entitled to judgment as the prevailing party solely on her unpaid wages claim.

## II. <u>PROCEDURAL HISTORY.</u>

On October 26, 2009, Plaintiff filed her Complaint alleging: Unlawful Interference with FMLA rights; Discrimination under the FMLA; Failure to provide CFRA leave; Unlawful discharge and discrimination under CFRA; Failure to prevent discrimination under CFRA; and Termination in violation of California's public policy. Compl., ECF No. 1.

Plaintiff's First Amended Complaint ("FAC") added a claim

1145 n. 4 (9th Cir. 2003) ("CFRA adopts the language of the FMLA and California state courts have held that the same standards apply."); *See also Moreau v. Air France*, 2002 WL 500779, *1 (N.D. Cal. Mar. 25, 2002) (discussing only FMLA principles because CFRA and FMLA are "substantively identical"). Any legal analysis of the FMLA applies equally to Plaintiff's CFRA claims.

for failure to pay earned wages, including vacation pay, and waiting time penalties. First Am. Compl., ECF No. 8. Defendant asserted fourteen affirmative defenses in its Answer to Plaintiff's FAC. Answer, ECF No. 15.

The parties filed cross motions for summary judgment on June 3, 2011. Mots. Summ. J., ECF Nos. 33, 41. The Memorandum Decision Order granted in part and denied in part the cross-motions. Summ. J. Order, ECF No. 98.

Trial began on July 13, 2011. On July 21, 2011, before the case was submitted to the jury, both parties filed motions for JMOL. ECF Nos. 197, 198. The Court heard oral argument on the cross-motions the same day. Trial Tr. 130-149, July 21, 2011. On July 22, 2011, the jury returned a verdict in favor of Defendant. ECF No. 208.

Plaintiff now submits her Renewed Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial pursuant to Fed. R. of Civ. Pro. 50(b) and 59(a). Plaintiff also moves under to under Rule 59(e) to amend the Judgment in order to recognize her prevailing party status on the unpaid wages claim.

### III. BACKGROUND.

Based on all the evidence entered and all the testimony taken, this case boils down to a classic "he said, she said" credibility dispute centered around what Plaintiff told her supervisors, and what they said in response, when she requested a

3

vacation to see her sick father in Guatemala.

In fall 2007, Plaintiff learned that her father in Guatemala was ill. Plaintiff contends that on November 16, 2007, she received a phone call from her niece that Plaintiff's father had taken a turn for the worse. Plaintiff booked a roundtrip ticket to Guatemala, leaving on November 23, 2007 and returning on December 27, 2007.

The following Monday, Plaintiff met with her direct supervisor, Linda Mendoza, and requested vacation time off to visit her sick father. A conversation ensued regarding Plaintiff's request. A dispute arose about who was involved in this conversation. Plaintiff, who claims to speak limited English, testified that no interpreter was present. Defendant's witnesses testified to the opposite. There is also a dispute regarding what was said during the conversation.

Ultimately, Ms. Mendoza approved Plaintiff for two weeks of vacation. Plaintiff's vacation slip states that she was required to return on December 10, 2007.

Plaintiff then spoke with the facility superintendant, Edward Mendoza. Witness testimony is highly conflicting regarding what was said during this conversation. Plaintiff claims Mr. Mendoza orally approved an extended leave of indefinite duration, explaining that she needed only to come back with a doctor's note to substantiate her need for FMLA leave. Mr. Mendoza testified

that he told Plaintiff if she needed time past her vacation time off, that she would need to fax or send human resources ("HR") a doctor's note, presumably from Guatemala.

Plaintiff left for Guatemala without contacting the HR office as she had on the fifteen prior occasions she had requested FMLA leave.

While in Guatemala Plaintiff learned that she would need to stay past her scheduled return date. Plaintiff testified that she unsuccessfully attempted to call and to fax a note to FPF. Defendant's witnesses testified that they did not receive any contact from Plaintiff, telephonic or by fax, while she was in Guatemala.

Plaintiff returned to the United States on December 27, 2007. She learned that her job had been terminated pursuant to FPF's policy that employees are automatically terminated if they do not call or come to work within three days of the expiration of their scheduled time off.

## IV. LEGAL STANDARDS.

### A.   Judgment as a Matter of Law.

Fed. R. Civ. Pro. 50(a) provides:

If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against

5

> the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

The standards governing a motion for judgment as a matter of law pursuant to Rule 50 are reiterated in *Gibson v. City of Cranston*, 37 F.3d 731, 735 (9th Cir. 1994):

> When confronted with a motion for judgment as a matter of law . . . a trial court must scrutinize the proof and the inferences reasonably to be drawn therefrom in the light most amiable to the nonmovant ... In the process, the court may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of evidence ... A judgment as a matter of law may be granted only if the evidence, viewed from the perspective most favorable to the nonmovant, is so one-sided that the movant is plainly entitled to judgment, for reasonable minds could not differ in the outcome ....

B.   <u>Motion for New Trial.</u>

A motion for new trial "may be granted to all or any of the parties and on all or part of the issues ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. Pro. 59(a). "The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990).

A new trial is necessary when the court, upon reviewing the evidence presented at trial and considering the jury's verdict, "is left with the definite and firm conviction that a mistake has been committed." *Tortu v. Las Vegas Metro. Police Dept.*, 556 F.3d

1075, 1087-88 (9th Cir. 2009) (*quoting Landes Constr. Co v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987)). A motion for new trial may also be granted to correct an erroneous evidentiary ruling that results in substantial prejudice to a party. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).

The grounds upon which a new trial has been granted are: (1) where the jury's verdict is so contrary to the clear weight of the evidence; (2) if the verdict is based on false evidence; or (3) if there would otherwise be a miscarriage of justice. *Roy v.Volkswagen of America, Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990).

"While the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial 'merely because it might have come to a different result from that reached by the jury.'" *Id. quoting Wilhelm v. Associated Container Transp. (Australia) Ltd.*, 648 F.2d 1197, 1198 (9th Cir. 1981); *Wallace v. City of San Diego*, 479 F.3d 616, 630 (9th Cir. 2007).

## V. DISCUSSION.

A.    Applicable FMLA Law.[2]

_____

[2] Error! Main Document Only.The FMLA was amended in 2008, and the U.S. Department of Labor revised its implementing regulations effective 2009. Nat'l Defense Auth. Act Pub. L. No. 110-181, Sec. 585 (2008); 73 Fed. Reg. 67934 (Nov. 17, 2008). The events giving rise to Plaintiff's complaint occurred prior to these amendments and revisions. All references are to the prior version of the FMLA and its 1995 regulations.

Under the FMLA, 29 U.S.C. § 2601, *et seq.*, the employee must establish: (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. Sanders v. City of Newport, --- F.3d ---, 08-35996, 2011 WL 905998, *5 (9th Cir. Mar. 17, 2011) (*citing Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)). The first three elements were satisfied, leaving only these issues for jury to decide: whether Plaintiff gave sufficient notice of her need for FMLA leave, and if so, whether Defendant denied Plaintiff FMLA benefits to which she was entitled.

The jury found that Plaintiff did not give sufficient notice. A determination of insufficient notice means that Defendant cannot be held liable on any of Plaintiff's FMLA/CFRA claims. "When the employee fails to give his employer proper notice, the employer is under no duty to provide FMLA leave." *Righi v. SMC Corp*., 632 F.3d 404, 408 (7th Cir. 2011). Without sufficient "notice that [an employee] need[s] or intend[s] to take medical leave," the employer's obligations under the FMLA are never triggered in the first place. *Walls v. Central Contra Costa Transit*, --- F.3d ---, 2011 WL 3319442, *2 (9th Cir. 2011).

The sole issue on Plaintiff's JMOL is whether evidence

exists to support the jury's verdict that her notice was

insufficient. To give sufficient notice for leave, "[e]mployees

need only notify their employers that they will be absent under

circumstances which indicate that the FMLA might apply."

*Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d. 1112, 1130 (9th

Cir. 2001). "The employee need not expressly assert rights under

the FMLA or even mention FMLA, but may only state that leave is

needed." 29 C.F.R. § 825.303(b). Once an employee alerts her

employer to her potential need for FMLA-qualifying leave, an

employer must "inquire further of the employee if it is necessary

to have more information about whether FMLA leave is being sought

by the employee, and[/or] obtain the necessary details of the

leave to be taken." 29 C.F.R. § 825.302(c); *see also Bailey v.*

*Southwest Gas Co.*, 275 F.3d 1181, 1185 (9th Cir. 2002). "The

employee. . . will be expected to provide more information."  29

C.F.R. § 303(b).

B.   Sufficiency of Notice.

     1.   Plaintiff's Initial Request For Time Off.

     It is undisputed that Plaintiff's initial request was for

vacation time off.[3] The dispute centers around whether Plaintiff,

_____

[3] Plaintiff admits she requested vacation time off to care for her father:

     [Q.] [T]ell us about your conversation with Linda. Can you tell the jury
     about that conversation.

     [. . .]

     [A] I said, "Linda, please for me, Linda, for me vacation.

nonetheless, should have been placed on FMLA leave because Defendant knew that Plaintiff was taking time off to care for her sick father in Guatemala. Defendant does not dispute that it had knowledge of Plaintiff's reason for leave, but asserts it acted within the boundaries of the FMLA by inquiring further into Plaintiff's leave request and Plaintiff ultimately refused her right to take medical leave.

Defendant presented evidence that Plaintiff's understanding regarding taking FMLA leave was that she had to go to FPF's HR office, and not her direct supervisor, to request time off.[4] Tr. 44:21-45:2 (Escriba testifed that each time she needed medical leave she would bring a doctor's note to the HR office and not go to her direct supervisor). Plaintiff's direct supervisor, Linda

_____

[. . .]

And she said, "Maria, two week of vacation for you." I said, "Okay, Linda."

Tr. 198:24-199:6, July 14, 2011 (Escriba); *see also* Tr. 106:24, July 14, 2011 (L. Mendoza) ("A. She asked me if she could get a vacation.")

[4] Plaintiff contends that the evidence regarding Plaintiff's prior leaves was improperly admitted because Plaintiff's knowledge of FPF's internal FMLA policies is not relevant to her leave designation in this case, citing 29 C.F.R. § 825.302(d). Plaintiff's argument misses the mark. Section 825.302(d) states that an employee's "failure to follow. . . internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave <u>if the employee gives timely verbal or other notice</u>." (emphasis added.) Defendant does not argue that Plaintiff failed to comply with FPF's *internal policies*. Defendant argues that Plaintiff did not comply with the *employee's* requirement to give *sufficient notice*. *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1217 (1998)("[A]n employer may not deny FMLA to an employee who does not comply with internal policies and procedures, <u>so long as he or she complies with the notice requirements of FMLA</u>.")(emphasis added). Evidence of Plaintiff's prior leaves is relevant and was properly admitted to demonstrate that Plaintiff was aware of her right to FMLA leave and that she knew how to comply with the employee's FMLA requirement to give sufficient notice, as she had done on fifteen prior occasions, yet did not do so on this occasion.

Mendoza, also acknowledged that HR handles FMLA leave requests. Ms. Mendoza testified that if an employee came in and stated "'I need time off because I have a family member ill.' That would be a trigger. I would automatically send them to HR. Tr. 100:14-17, July 14, 2011.

Defendant presented additional evidence that Plaintiff had knowledge of FMLA leave and how to invoke it. Plaintiff testified that she had successfully taken FMLA leave on __fifteen__ prior occasions. Tr. 40:13-14, July 15, 2011 (Escriba agreeing that she took "leave for medical or family reasons 15 different times"); *see also* Joint Exs. 403, 408, 412, 415, 426 and 103.K. On each of those occasions, she went directly to the HR office with a doctor's note for the requested time off, filled out the proper paperwork and was successfully granted FLMA leave. Tr. 44:21-45:2, July 15, 2011.

Plaintiff did not go to the HR office on this occasion. She went to her supervisor Ms. Mendoza because Ms. Mendoza is the person who approves vacation time. Tr. 76:14-20, July 15, 2011. Plaintiff requested vacation time off and her request was granted. Defendant, however, presented evidence that once Plaintiff stated that her need for leave was to fly to Guatemala to care for her sick father, Ms. Mendoza inquired further into Plaintiff's leave request through translator Alfonso Flores:

> Q. And you said in your deposition that her exact words were, quote, "Yeah, my father is ill." Close quote. Does

1   that sound right?

2   A. That's what she said, her father was ill.

3   Q. And also you said that she told you her father was in
4   Guatemala.

5   A. That is true.

6   Q. Were you unaware of that before that moment?

7   A. Yes.

8   [. . .]

9
    Q. And then the next thing that you recall is that you asked
10  Maria Escriba, you said, in your deposition, this was a
    quote. Quote, "Maria, do you really think two weeks is
11  enough time?" Close quote. Is that correct?

12  A. That is correct.

13  Q. That's the next thing you said to her?

14  A. Yes, it was.

15  Q. In English.

16  A. In English.

17
18  Q. And she looked at you and, in your deposition, you said
    she looked at me and, quote, she goes, yeah, that will be
19  okay," close quote. Is that what you remember her saying?

20  A. That's what I remember her saying.

21  Q. And it was at that point that you decided to go get
22  another supervisor to come in and help you to translate
    something. Correct?
23
24  A. That is correct.

25  Q. And to help you communicate with Maria Escriba.

26  A. Well, to make sure she could understand what I was
    asking.
27
28  Q. All right. Because you weren't sure whether or not she

12

1    understood.

2    A. Since there were multiple words —

3    Q. Well, just —

4    A. -- put into a sentence, I wanted to make sure she
5    understood.

6    Q. And you weren't sure that she did.

7    A. I was not sure.

8    Q. Okay. So the supervisor came in, his name is Alfonso
9    Flores.

10   A. Alfonso Flores.

11   Q. And then you asked him to translate the following. . .
12   "Ask her if she needs more time. She's telling me she's
     going to Guatemala." Close quote.
13
     Is that what you asked Mr. Flores to translate?
14
     A. Yes.
15
     Q. And you said Mr. Flores asked her, and then Maria
16   indicated to him "no." Is that correct?
17
     [. . .]
18
     A. She said the word "no."
19
     [. . .]
20
     Q. And then you told me that Alfonso turned to you and said,
21   "Well["] -- and you quoted again in your deposition.
     ["]Well, she's saying she doesn't need any more time." Close
22   quote. Is that what he said to you then?
23
     A. Yes.
24
     Q. And you said to him, quote, "Look, ask her one more
25   time." Close quote. That's what you asked him to do?
26
     A. That is correct.
27
     Q. And then he did that and she, in turn, again said no.
28
                                    13

A. That is correct.

[. . .]

Q. Then you looked at Maria, as you were filling out the vacation form, and you told her, in English, "Maria, if you need more time, you need to go to the HR department and do the paperwork." Correct?

A. Alfonso translated that also.

Tr. 117:10-120:22; 121:5-9, July 14, 2011.

Alfonso Flores' testimony corroborates Ms. Mendoza's

testimony:

Q. The words you -- that you told me in English, in your deposition, that Linda asked you to translate were, quote, "Does Maria want more time off after her vacation?" Close quote. That's what she asked you to translate.

A. Yes.

Q. And you did that.

A. Yes.

Q. And Maria Escriba said, you told me in your deposition, she said no?

A. That is correct.

Q. And then Linda had you ask the same question over again.

A. Yes.

Q. And Maria said no.

A. Yes.

Q. That's what you told me in your deposition. But you also told me that Maria didn't just say "no," she said something like "No, I don't need it." Or "no, I don't want it."

A. The last -- yes, the last time I asked her, she says, "No, I don't need -- I don't want it."

14

Q. Don't want it. Okay. And then after the second time you asked that question and Maria said "no," what you told me in your deposition was that Linda Mendoza then said, "Tell her if she needs time, she needs to go to HR." Is that -- did Linda say that to you?

A. That is correct.

Q. And you told me that you translated that.

A. Yes.

Tr. 113:23-115:1, July 20, 2011.

Several reasonable inferences can be drawn from this evidence. First, because both Plaintiff and Linda Mendoza operated under the knowledge that FMLA leave is approved only by the HR office, and Linda Mendoza instructed Plaintiff to go to the HR office if she needed more time, the jury could reasonably infer that Linda Mendoza was further inquiring into whether Plaintiff was requesting family medical leave by instructing her to go to the HR office.

The conversation between Ms. Mendoza, Mr. Flores and Plaintiff in light of Plaintiff's knowledge and history regarding FMLA leave is substantial evidence that FPF complied with the FMLA notice regulations by inquiring into "whether FMLA leave [was] being sought by [Plaintiff]." 29 C.F.R. § 825.302(c). By Defendant's presentation of the evidence, Plaintiff was well of the need to go to HR to request leave, yet Plaintiff unequivocally declined to take more time and/or go to HR to request FMLA leave.

15

Plaintiff disputes that a conversation between Ms. Mendoza, Mr. Flores and Plaintiff occurred. Plaintiff testified that she spoke to Linda Mendoza without a translator and that *Plaintiff* requested additional time off, but Linda Mendoza refused to grant it:

> [A]: On our last day of work, she [Linda Mendoza] called me, she called me into her office. She gave me the paper. And she said, "Maria, two week of vacation for you." I said, "Okay, Linda. And then I said, the way that I could, "Please one week or two week free for me." "No, Maria," she said. After that, I said "Thank you."
>
> Q. And Ms. Escriba, what did you mean when you asked Linda Mendoza, One -- "Please, one or two weeks free for me"?
>
> A. For her to give me two more weeks leave.
>
> Q. And were you asking for unpaid leave or paid leave?
>
> A. Without pay.

Tr. 199:4-14, July 14, 2011 (Escriba).

This conflicting testimony over Plaintiff's request for leave raises credibility issues. On JMOL, however, "the court <u>may not</u> consider the credibility of witnesses [or] resolve conflicts in testimony." *Gibson*, 37 F.3d at 735 (emphasis added).

Alternatively, Plaintiff contends that Defendant improperly asserts a "wavier" defense by arguing that it was proper not to place Plaintiff on FMLA leave. Plaintiff states that because it is undisputed that Plaintiff told Ms. Mendoza and Mr. Mendoza that she was leaving to care for her sick father (an FMLA-qualifying reason), Plaintiff should have automatically been

placed on FMLA leave. Plaintiff either misunderstands the doctrine of waiver and the FMLA regulations or misunderstands Defendant's argument. It is true that an employee cannot waive the ability to take FMLA leave. That is not Defendant's argument. Defendant's cited evidence demonstrates that Plaintiff was given the option and prompted to exercise her right to take FMLA-leave, but that she unequivocally refused to exercise that right.

Section 825.303(b) states that once an employee alerts the employer that she may be taking leave for a FMLA-qualified reason, "[t]he employer will be expected to obtain any additional required information through informal means. The employee. . . will be expected to provide more information."  The regulation does not say, as Plaintiff apparently believes, that once an employee alerts the employer that she may be taking leave for a FMLA-qualified reason, the employee will be automatically placed on FMLA leave.

Contrary to Plaintiff's position, an employee may decline to take FMLA leave. Simply because an employee's reason for taking time off qualifies that employee to use his/her FMLA leave, does not mean that employee is forced to take or is automatically placed on FMLA leave; he/she has a choice.[5] *See, e.g., Ridings v.*

_____

[5] For example, under FPF's leave policy, if an employee seeks an FMLA-protected leave of absence, FPF requires the employee first to use paid vacation time which runs concurrently with their FMLA leave. Tr. at 144:18-24, July 15, 2011 (John Dias). Accordingly, some employees may only opt to take vacation time but later seek an extension via their FMLA leave. This preserves any FMLA time that would have been running concurrently with their initial

17

*Riverside Med. Ctr.*, 537 F.3d 755, 769 n.3 (7th Cir. 2008) (suggesting that an employer may not force the employee to take FMLA leave if the employee has some other basis for a leave "that is acceptable under the employer's policies."). Here Defendant presented substantial evidence that FPF inquired into Plaintiff's leave request and Plaintiff declined to take FMLA leave.

Viewing the evidence in a light most favorable to Defendant, it was reasonable for the jury to find that Plaintiff's notice was insufficient based on the mutually corroborating testimony of Ms. Mendoza and Mr. Flores regarding their conversations with Plaintiff, in combination with Plaintiff's extensive knowledge of how to request and her history of successfully giving notice of her need/desire for FMLA leave, and taking such leave, yet failing to request it in this circumstance.

2.    Post-Expiration of Plaintiff's Approved Two-Week Leave.

Defendant asserts that the jury was reasonable in finding that Plaintiff made no effort to request FMLA leave and/or to extend her leave once Plaintiff left for Guatemala.

It is undisputed that Plaintiff knew she "needed to be back to work" on December 10th and that if she missed three consecutive working days without reporting, she would be terminated. Tr. 37:9-38:18, 91:6-7, July 15, 2011 (Escriba). Defendant's witnesses testified, however, that they received no

vacation time off.

18

contact whatsoever from Plaintiff while she was in Guatemala well past the expiration of her approved time off. *See* Tr. 165:14-15, July 15, 2011.

Plaintiff testified that she tried to call FPF before her expected return date to inform FPF that she would not be returning. Tr. 82:9-11, July 15, 2011. Plaintiff had no record of such a phone call. Defendant points to Plaintiff's full cross-examination on the subject which shows an inconsistency between what she stated under oath at her unemployment hearing and what she testified to on the stand:

Q. You called before you were supposed to be back to work; right?

A. I think so.

Q. All right.

MR. ZARLENGA: All right. Well, I'd like to play the transcript of the [Plaintiff's unemployment] hearing.

Tr. 82:24-83:4, July 15, 2011.

"Question: Why didn't you call your employer to let them know that you would not be coming back by the 10th?

"Answer: I just couldn't think about it. I didn't remember.

"Question: So you said, quote, I couldn't think about it, unquote, can you explain that?

"Answer: Yes. I couldn't think clearly.

"Question: Because?

"Answer: Because I had buried my mother a year prior and I was -- and I saw that my father was very ill."

Q. Now, let's focus on the calls that you say you tried to

19

1  make from Guatemala to Foster Farms. Do you have any records
2  to show us here today to support your testimony that you
   made such calls?

3  A. No.

4  Q. You said also that you tried to fax things to Foster
5  Farms.

6  A. Yes.

7  Q. Do you have any records to support your testimony that
8  you tried to fax anything to Foster Farms in November or
   December of 2007?

9  A. I have Yvette's card.

10

11 Q. Yvette's card does not prove that you tried to fax
   anything to Foster Farms; does it?

12 A. I don't have proof of that.

13 [. . .]

14

15 Q. While you were at Guatemala in November and December of
   2007, you talked to your husband on the telephone; isn't
16 that correct?

17 A. Yes.

18 Q. And your husband was working at Foster Farms at that
   time; is that right?
19

20 A. Yes.

21 Q. He still works there today; right?

22 A. Yes.

23 [. . .]

24 Q. Does he use the same office of personnel that you use?

25 A. Yes.

26

27 Q. So while you were in Guatemala and talking to your
   husband from time to time, did you ask him to go to the
28 department of personnel at Foster Farms and tell them on

                              20

your behalf that you would not be coming back?

A. No.

Tr. 84:7-87:2, July 15, 2011.

Based on the verdict, the jury did not believe Plaintiff's testimony. The jury may take into account whether other evidence contradicts the witness's testimony and choose to give little or no weight to Plaintiff's testimonial evidence. Jury Instructions 7. The jury was reasonable in refusing to believe Plaintiff's inconsistent testimony and find that Plaintiff made no effort to give notice of an extension after her approved leave ended.

C.   Conclusion Re: Sufficiency of Notice.

Based on the evidence presented, the jury found FPF's case more credible and persuasive, as is their prerogative. *See e.g.*, Jury Instruction 7 ("You may believe everything a witness says, or part of it, or none of it."). Plaintiff received her day in court to present the facts and evidence as she asserts they happened. The jury weighed the all evidence, taking into account both Plaintiff's and Defendant's view and ultimately decided in Defendant's favor based on substantial evidence she did not request FMLA leave. Plaintiff's JMOL is DENIED.[6]

Plaintiff's motion for new trial is also DENIED. In order to grant a new trial, the court must be "left with the definite and

_____

[6] Because the jury found that notice was insufficient, and therefore, Plaintiff was at no time on FMLA-protected leave, Plaintiff's remaining arguments on the subject are moot.

21

firm conviction that a mistake has been committed". *Landes Constr. Co.*, 833 F.2d at 1372 (*citing Tennant v. Peoria & Pekin Union Ry.*, 321 U.S. 29, 35 (1944). Taking all evidence into account, including Defendant's substantial evidence that Plaintiff did not exercise her right to take FMLA leave and, following the lapse of her approved time off, did not attempt to contact FPF to extend her leave, the court would simply be substituting a different view of the evidence; i.e., Plaintiff's view, for that of the jury. Based on the totality of circumstances, the record does not create a "firm conviction" that the jury was mistaken.

D.    <u>Amendment of the Judgment.</u>

Plaintiff seeks to amend the judgment pursuant to Fed. R. Civ. Pro. 59 contending that, pursuant to California case law, she is the prevailing party on her unpaid wages claim. Defendant rejoins that under federal case law, Plaintiff is not the prevailing party.

The complaint in this action alleges federal question jurisdiction under 28 U.S.C. § 1331. In diversity cases, state laws governing availability of attorney's fees for claims under state law - i.e., which party is the prevailing party - are deemed "substantive" because they serve specific state policy governing litigation. *Alyeska Pipeline Service Co. v. Wilderness Soc.*, 421 U.S. 240, 259 (1975). The Erie principles apply equally

in the context of supplemental jurisdiction (28 U.S.C. § 1367).

*Mangold v. Calif. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th

Cir.1995) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715

(1966)); *see also Diamond v. John Martin Co.*, 753 F.2d 1465, 1467

(9th Cir.1985) ("The rule in this circuit requires that federal

courts. . . apply state law with regard to the allowance (or

disallowance) of attorneys' fees."). Here, supplemental

jurisdiction exists over Plaintiff's Cal. Labor Code claim for

unpaid wages. California law applies to the determination of

prevailing party/availability of attorneys' fees.

> Under California law:
>
> [A]n attorney fee award may be justified even when plaintiff's legal action does not result in a favorable final judgment. . . . The critical fact is the impact of the action, not the manner of its resolution. [¶] [A]ttorney fees may be proper whenever an action results in relief for the plaintiff, whether the relief is obtained through a 'voluntary' change in the defendant's conduct, through a settlement, or otherwise. Thus, <u>an award of attorney fees may be appropriate where plaintiffs' lawsuit was a catalyst motivating defendants to provide the primary relief sought</u>. A plaintiff will be considered a 'successful party' where an important right is vindicated 'by activating defendants to modify their behavior.

*Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 565-567 (2004)

(emphasis added and citations omitted).

Here, Defendant had a duty under the Cal. Labor Code to pay

Plaintiff "immediately" upon termination for earned wages and

accrued vacation time. *See* Cal. Labor Code § 201 ("If an employer

discharges an employee, the wages earned and unpaid at the time

23

of discharge are due and payable immediately.") Plaintiff was terminated on or about December 12, 2007. FPF admits it failed to timely and fully compensate Plaintiff for all earned wages and accrued vacation time at her termination. Nearly two and a half years later, on March 10, 2010, Plaintiff filed her FAC, at which time she still had not been compensated. Plaintiff's FAC prayed for payment of her wages, accrued vacation time and the waiting time penalty authorized by Cal. Labor Code §§ 201, 227.3, and 203. Only after filing the FAC did Defendant pay Plaintiff what she was owed. *See* Def.'s SUF, Decl. Skol, Ex. X ("On or about May 3[,] 2010, I caused to be sent to plaintiff's counsel a check in the amount of $2,330.40 for all waiting penalties.")

Plaintiff has demonstrated that her "lawsuit was a catalyst motivating defendants to provide the primary relief sought." Plaintiff is the prevailing party on her unpaid wages claim. The judgment will be amended accordingly. Plaintiff is entitled to costs and fees limited only to the time and efforts spent litigating her unpaid wages claim, none of which include the jury trial or any legal services rendered after March 10, 2010. In all other respects, Defendant is the predominately prevailing party.

### VI. CONCLUSION.

For the reasons cited above:

1.   Plaintiff's JMOL and Motion for New Trial are DENIED. Substantial evidence was presented for a reasonable jury finding

24

that Plaintiff's notice to take FMLA leave was insufficient.

2.   Plaintiff's Motion to Amend the Judgment is GRANTED. Plaintiff is the prevailing party only on her state unpaid wages claim. Plaintiff is entitled any attorneys fees limited solely to the time and efforts spent litigating her unpaid wages claim prior to March 10, 2010.

3.   Defendant is entitled to recover their costs of suit.


Defendants shall submit an order in conformity with this decision within two (2) calendar days following electronic service of this order.

SO ORDERED.

DATED: September 29, 2011.
                                        Oliver W. Wanger
                                        Oliver W. Wanger
                                   United States District Judge