UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| MARIA ESCRIBA, | 1:09-CV-1878 LJO MJS |
|---|---|
| Plaintiff, | ORDER ON MOTION FOR REVIEW OF CLERK'S TAXATION OF COSTS (DOC 249) |
| v. | |
| FOSTER POULTRY FARMS, a California Corporation, | |
| Defendant. | |

## I. INTRODUCTION.[1]

Maria Escriba ("Plaintiff") moves this Court to review the clerk's taxation of costs. Plaintiff asserts that Foster Poultry Farms' ("Defendant") costs in the amount of $13,958.16 should be denied. Plaintiff contends that this case meets the Ninth Circuit standard for denial because (1) the case involved issues of substantial public importance, (2) Plaintiff has limited resources, (3) there is great economic disparity between Plaintiff and Defendant, (4) the issues were close and difficult, and (5) awarding costs here would have a chilling effect on future, meritful FMLA/CFRA litigation. Alternatively, Plaintiff requests the costs be further reduced. Defendant opposes the motion.

---

[1] Because oral argument was not of material assistance, the Court ordered these matters submitted on the briefs. E.D. Cal. L. R. 230 (g).

1

## II. BACKGROUND.

This wrongful termination in violation of FMLA/CFRA action was tried before a jury starting July 13, 2011 after cross motions for summary judgment were denied. ECF Nos. 98, 186. On July 21, 2011, before the case was submitted to the jury, both parties filed motions for judgment as a matter of law ("JMOL"). ECF Nos. 197, 198. The motions were denied.

On July 22, 2011, the jury returned a verdict in favor of defendant. ECF No. 208. Plaintiff filed her Renewed Motion for Judgment as a Matter of Law and Motion to Amend the Judgment on August 19, 2011. ECF No. 221. On September 29, 2011, the Court denied Plaintiff's JMOL and granted Plaintiff's Motion to Amend, naming her prevailing party on her unpaid wages claim. ECF No. 241.

Defendant filed its Bill of Costs on August 16, 2011, seeking $21,703.31. ECF No. 220. On August 22, 2011, Plaintiff filed objections, arguing that costs should be denied or that they should be reduced by $14,003.31. ECF No. 222. On October 13, 2011, the clerk taxed costs in the amount of $13,958.16. ECF No. 248.

## III. STANDARD OF DECISION.

A district court reviews the clerk's taxation of costs de novo. *Rivera v. NIBCO*, 701 F. Supp. 2d 1135, 1137 (E.D. Cal. 2010) (*citing, Lopez v. San Francisco Unified Sch. Dist.,* 385 F. Supp. 2d 981, 1000–1001 (N.D. Cal. 2005)). A district court is not bound by the record nor required to show any deference to the Clerk's conclusions. *See Sea Coast Foods, Inc. v. Lu-Mar Lobster and Shrimp, Inc.*, 260 F.3d 1054, 1058 (9th Cir. 2001).

## IV. DISCUSSION.

Plaintiff argues that the Court should exercise its discretion and deny all costs because Plaintiff has limited financial resources, there is great financial disparity between the parties, the

issues in this case were of substantial public importance, the issues were close and difficult, and awarding costs would have a chilling effect on future, low-wage earner litigants asserting wrongful termination in violation of FMLA.

Fed. R. Civ. P. 54(d)(1) states:

"Unless a federal statute, these rules, or a court order provides otherwise, costs-other than attorney's fees-should be allowed to the prevailing party ..."

The types of costs that may be awarded under Rule 54(d) are limited to those enumerated in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-442 (1987). In pertinent part, 28 U.S.C. § 1920 states:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case

While the rule creates a presumption in favor of awarding costs to a prevailing party, it also vests in the district court the discretion to refuse to award costs. District courts have "wide discretion" in determining whether and to what extent prevailing parties may be awarded costs pursuant to Rule 54(d). *K-S-H Plastics, Inc. v. Carolite, Inc.*, 408 F.2d 54, 60 (9th Cir. 1969); *see, Assoc. of Mexican-American Educators v. State of Cal.*, 231 F.3d 572, 591 (9th Cir.2000) (en banc). However, "this discretion is not unlimited. A district court must 'specify reasons' for its refusal to award costs." *Assoc. of Mexican-American Educators*, 231 F.3d at 592 (*quoting, Subscription Television, Inc. v. S. Cal. Theatre Owners Ass'n*, 576 F.2d 230, 234 (9th Cir.1978)). The reasons specified must "explain why a case is not ordinary and why, in the circumstances, it would be inappropriate or inequitable to award costs." *Id*. at 593 (internal quotation marks

3

omitted). The losing party bears the burden of providing such reasons to the court. *See, e.g., Mansourian v. Bd. of Regents of the Univ. Of Cal. at Davis*, 566 F. Supp. 2d 1168, 1171 (E.D. Cal. 2008).

The Ninth Circuit has approved the following reasons for refusing to award costs to a prevailing party: (1) the losing party's limited financial resources; (2) misconduct on the part of the prevailing party; (3) the chilling effect of imposing such high costs on future civil rights litigants; (4) whether the issues in the case were close and difficult; (5) whether the prevailing party's recovery was nominal or partial; (6) whether the losing party litigated in good faith; and (7) whether the case presented issues of national importance. *Quan v. Computer Sciences Corp.*, 623 F.3d 870, 888-89 (9th Cir. 2010) (*citing Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003)); *Assoc. of Mexican-American Educators*, 231 F.3d at 592 (citing similar factors). However, this is not "an exhaustive list of 'good reasons' for declining costs." *Assoc. of Mexican-American Educators*, 231 F.3d at 593.

        1.     <u>Plaintiff's Limited Financial Resources.</u>

In deciding whether to award costs, the Court should consider the plaintiff's financial resources. Indeed, in civil rights cases a court abuses its discretion when it awards costs against a losing plaintiff without considering the plaintiff's limited financial resources. *Assoc. of Mexican-American Educators*, 231 F.3d at 592; *Stanley v. University of Southern California*, 178 F.3d 1069, 1079–80 (9th Cir.1999). It is not necessary to find that the plaintiffs in question are currently indigent; rather, the proper inquiry is whether an award of costs might make them so. *Stanley*, 178 F.3d at 1079–80 (referring to the possibility that the plaintiff "would be rendered indigent should she be forced to pay" the amount assessed against her); *see also Mansourian*, 566 F. Supp. 2d at 1171 (refusing to award costs against student plaintiffs, noting their "limited financial resources" and that they were barely able to cover their monthly living expenses).

4

Further, it is not necessary that Plaintiff provide documentary evidence of her financial status. *See Assoc. of Mexican-American Educators*, 231 F.3d 572; *Rivera* 701 F. Supp. 2d at 1143; *Mansourian*, 566 F. Supp. 2d. at 1171.

Here, Plaintiff states the following which, although not necessary, is supported with documentary evidence:

> The plaintiff, an immigrant woman, was a low-wage worker at Foster Farms until it terminated her employment nearly four years ago. The trial record includes her wage information for the years before Foster Farms fired her, showing that, as a Foster Farm worker, the plaintiff earned $81,352.57 in total net pay over a seven year period from 2000-2007 (an average of $11,621.80 per year). [Decl. of Elizabeth Kristen, Ex. H, ECF No. 249.] These documents show that plaintiff's hourly wage was $9.71 at the time of her termination. Documents produced to defendant pursuant to a trial subpoena show that plaintiff's post-termination earnings for 2008-2010 were $12,117.50, or $4039.16 per year (averaged over three years). [Decl. Kristen, Ex. I.] Trial testimony showed that plaintiff diligently sought employment after her termination from Foster Farms but never obtained steady work. [Decl. Kristen. Ex. C.] The plaintiff's back pay calculation for four years' wages combined was less than $75,000. [Decl. Kristen, Ex. F.] Plaintiff's earnings while working at Foster Farms meets the U.S. Department of Housing and Urban Development's classification for 'very low income' and since Foster Farms terminated her, she meets HUD's classification for 'extremely low income.' [Decl. Kristen, Ex. L.]

Mot. Review Tax. Cost at 8:14-9:4. Accordingly, Plaintiff has demonstrated that she is a "low wage worker[], employed in [an] hourly job[], who do[es] not have substantial financial resources." *Rivera* 701 F. Supp. 2d at 1143 (finding the plaintiffs properly demonstrated limited financial resources based on their "low income" or "very low income" classification used by the U.S. Department of Housing and Urban Development).

Defendant's arguments regarding Plaintiff's limited resources are unavailing. Defendant argues that Plaintiff cannot claim to have limited financial resources because she has apparently been able to pay thousands of dollars of her own costs to litigate this case. Plaintiff rejoins, however, that all her litigation costs were advanced by the non-profit organization representing her because she was unable to pay the costs herself. Plaintiff, howver, will be fully responsible to pay Defendant's costs, should they be awarded. Decl. Kristen ¶ 3. Pursuant to case precedent, and

5

with no reason to suspect otherwise, the Court accepts Plaintiff's statements and supporting declarations as a truthful account of the financial arrangement between her and her legal representation.

Defendant also argues that Plaintiff may not have limited financial resources because "her husband works as well." Opp'n at 5:7. However, Defendant offers no information as to how Mr. Escriba's salary affects Plaintiff's low income status; e.g., Plaintiff's average salary, an amount undisputed by Defendant, is so low that even taking Mr. Escriba's salary into account, the couple could still be classified as "low income" by HUD. Defendant offers only the vague suggestion that Plaintiff has "more than she lets on." *Id.* at 5:14-15. This does little to persuade the Court to abandon the presumption of truth provided to movants and the documentary evidence provided here regarding Plaintiff's limited financial resources/status.

Moreover, the typical case in which a Plaintiff's limited financial status is questioned or deemed irrelevant is one in which the plaintiff receives a substantial settlement from a co-defendant in the case, and therefore, can pay the cost bill from the settlement without worsening his/her existing economic circumstances. *See e.g., Van Horn v. Dhillon*, 2011 WL 66244, at *4 (E.D. Cal. Jan. 10, 2011); (finding that the plaintiff could pay the $12,123.89 settlement from an over $100,000 settlement she received); *Rosa v. City of Seaside*, 2010 WL 583953, at *3 (N.D. Cal. Feb. 6, 2010) (finding that the plaintiffs could pay the $35,000 cost bill from the $225,000 settlement they received from other defendants). This is not the case here; there are no other defendants from whom Plaintiff received settlement funds.

Plaintiff has limited financial resources.

2. <u>Financial Disparity Between the Parties.</u>

The financial disparity between the parties is also a relevant consideration. *See Assoc. of Mexican-American Educators*, 231 F.3d at 592 (denial of costs appropriate where there exists

6

*inter alia* a great economic disparity between the plaintiffs, who were individuals and small nonprofit educational organizations, and the defendant was the state of California). It is undisputed that Foster Farms is a multi-state operation with more than 10,000 employees and a global product line, which made approximately 2 billion dollars in revenue in 2007[2] and 2009.[3] Decl. Kristen, Ex. M.

There is significant disparity between the resources of the parties in this case.

### 3. Issues of Substantial Public Importance.

Another permissible consideration in evaluating whether a cost bill should be denied outright is whether the issues in the case were of substantial public importance. *Assoc. of Mexican-American Educators*, 231 F.3d at 592. In *Assoc. of Mexican-American Educators*, the Ninth Circuit explained:

> [Plaintiffs] have brought an action that presents issues of gravest public importance, and the action affects tens of thousands of Californians and the state's public school system as a whole.

*Id*. at 593.

Defendant attempts to distinguish *Assoc. of Mexican-American Educators*, arguing that this case is not as important because its impact was limited to "[t]he mundane, fact-specific determinations" of the jury in this "small, private dispute of little public importance." Opp'n at 3:7-11.[4] This description of the case is overly narrow.

---

[2] Forbes.com, "America's Largest Private Companies," available at http://www.forbes.com/lists/2008/21/privates08_Foster-Farms_IPCZ.html (last visited January 12, 2012).
[3] Forbes.com "America's Largest Private Companies" available at http://www.forbes.com/lists/2010/21/private-companies-10_Foster-Farms_IPCZ.html (last visited January 12, 2012).
[4] Although this case and its issues are heavily downplayed in Defendant's brief, the Court notes that in a press release by Defendant's legal representation the case is touted as much more than a "mundane, fact-specific jury determination." The press release states in pertinent part:

> Mayer Brown litigators captured a jury trial victory for client Foster Poultry Farms in a *closely-watched* employment case in the US District Court for the Eastern District of California, Fresno Division. *Though brought by a lone employee, the case potentially had a much broader application to the workplace*.

7

There are a number of reasons why this case has substantial public importance. Plaintiff has provided a letter written by Jennifer Brand, Associate Solicitor of the Office of the Solicitor's Fair Labor Standards Division of the U.S. Department of Labor (the "Department of Labor")[5] which articulates these reasons well.

First, Plaintiff and the Department of Labor correctly state that while Defendant argues that an action involving a single plaintiff cannot be a case of substantial importance, this argument has been rejected on at least two occasions. *See Rivera*, 701 F. Supp. 2d at 1142; *Washburn v. Fagan,* No. C03-00869, 2008 WL 361048, at * 2 (N.D. Cal. Feb 11, 2008). Further, the Assistance Solicitor argues that adopting such an argument would have a uniquely negative impact on FMLA cases because of the nature of the claims brought pursuant to the Act. "FMLA actions typically involve inherently individualized questions such as whether the employee's or his/her family member's medical condition qualifies as a serious health condition, the sufficiently of the employee's notice of need for FMLA leave, and/or whether the employer restored the employee to the position he/she held when the leave commenced" and do not lend themselves to class or collective actions.  Decl. Kristen, Ex. K at 2. Finding that actions brought by individual plaintiffs cannot be cases of substantial importance has the potential to single out FMLA actions as "not substantial" simply for the inherently individualized nature of FMLA claims.

Second, this case has broader application than a mundane, private matter because it involves a low-wage earner. "Low-wage workers likely have less leave available to them than other workers – making the FMLA's entitlement to unpaid leave particularly important. In addition, low-wage workers are more likely to be the only wage earner in a single parent household and are thus more vulnerable if they lose their job – making the FMLA's employment

---

Decl. Kristen, Ex. G (emphasis added); *see also,* Mayer Brown News, Mayer Brown Captures Jury Trial Victory for Foster Poultry Farms, (July 22, 2011), http://www.mayerbrown.com/news/article.asp?id=11374&nid=19.
[5] The U.S. Department of Labor is responsible for administering and enforcing the FMLA. Decl. Kristen, Ex. K at 1.

8

restoration provision particularly important too." Decl. Kristen, Ex. K at 2. Thus, the case, whatever the outcome, had a particular effect and importance to an entire class of people nationwide.

And finally, this case further clarified and established the parameters of sufficient employee notice. Sufficient employee notice is the gatekeeping function which determines whether the employer's and employee's rights and responsibilities are triggered under the FMLA. *Id.* Clarification of its parameters are of importance to employees and employers nationwide.

The issues raised in this case, although ultimately unsuccessful, were of substantial public importance.

### 4. The Issues Were Close and Difficult.

The district court denied the parties' voluminous cross-motions for summary judgment in a 42-page memorandum decision order, including detailed analysis of the many evidentiary, legal and factual issues. The pre-trial proceedings (e.g., the extensive motion in limine proceedings) and post-trial proceedings (e.g., the detailed jury instructions) were lengthy, complex and vigorously litigated.

Defendant argues that the action could not be close or difficult because the jury took only a few hours to reject Plaintiff's claims. However, the jury's ultimate rejection of Plaintiff's claims does not undermine the legal and factual issues involved in the case and that neither summary judgment nor judgment as a matter of law could be granted. *See Rivera,* 701 F. Supp. 2d at 1144. The issues presented in this case required close attention to detail, including hearing and understanding expert testimony on proper HR policies – testimony not typically needed in FMLA cases – and understanding FMLA regulations and their application to the facts.

Defendant further argues that the denial of summary judgment is essentially meaningless since it "describes literally *every* case that goes to trial." Opp'n at 3:20. While it is true that

almost every case that goes to trial is the result of a denied summary judgment motion, this statement does nothing to further the inquiry of whether the issues were close. The point regarding denial of summary judgment is that many FMLA-based actions never make it to trial because the law and facts can be decided on dispositive motion with no need for a jury to sift through and weigh the facts and evidence. Indeed, if the issues were not close it is likely they could have been decided on summary judgment or at least on judgment as a matter of law at the close of evidence.

Both Plaintiff and Defendant argued meritful positions. In the end, the jury found Defendant's position to be more persuasive.

5.    Chilling Effect.

Defendant argues that this case does not warrant concern for the potential chilling effect taxing costs might have because it is not a case of substantial importance to the public. Opp'n at 5:23-6:5. As discussed in A. 3. the Court finds this case to be of substantial importance.

Further, in cases which make it to jury verdict and involve low-wage earners courts have been willing to deny costs even when those costs are low. *Compare e.g., Sorgen v. City and County of San Francisco,* No. 05-CV-03172 THE, 2007 WL 521235, at *3-4 (N.D. Cal. Feb. 15, 2007) (awarding costs of $4,987 in a case decided on summary judgment); *Ardalan v. Monterey Institute of Intern. Studies, No.* C 03-01075 JFPVT, 2004 WL 2047593, at * 3-4 (N.D. Cal. Sep. 4, 2004) (awarding costs of $2,838.35 in a case decided on summary judgment); *with, Rivera*, 701 F. Supp. 2d at1144-1145 (denying costs of $3,600 per plaintiff in case decided by jury verdict where the plaintiffs were low-wage earners).

Moreover, the Department of Labor expresses its concern that low-wage earners will be dissuaded from bringing private FMLA actions by the prospect of paying the employer's cost bill at the conclusion of a mertiful, but ultimately unsuccessful FMLA enforcement action. Decl.

Kristen, Ex. K at 2. "Any barrier that prevents a group of otherwise eligible employees from bringing meritorious FMLA actions could undermine enforcement of the Act." *Id*. "[T]he opportunity to bring a meritorious FMLA enforcement action must be equally available to all employees regardless of their financial resources." *Id.*

For a low-wage earner, the threat of a $13,958.16 cost bill, which in this case is more than 100% of Plaintiff's average annual income, is a strong disincentive to bring a mertiful suit. *See Rivera,* 701 F. Supp. 2d. at 1145 (finding that a cost bill representing 14% of the plaintiffs' annual income was a significant disincentive).

While any of these factors by themselves may not automatically warrant denial of costs, *see e.g., Save Our Valley v. Sound Transit,* 335 F.3d 932, 946 (9th Cir. 2003), these factors in combination support denial of a cost award.[6]

### V. CONCLUSION AND ORDER.

For the reasons set forth above, Plaintiff's Motion to Review the Clerk's Taxation of Costs is GRANTED. Defendants shall not recover costs in this case.

IT IS ORDERED.

Dated: January 20, 2012        /s/ Lawrence J. O'Neill
                              Lawrence J. O'Neill
                              United States District Judge

---

[6] Because the Court denies awarding Defendant's costs, Plaintiff's alternative argument to further reduce costs is moot.